STATE *et al.* v. CITY OF DAYTONA BEACH

158 So. 300.
Opinion Filed December 28th, 1934.

*Ray Selden,* for Appellants;

*Leon J. C. Harton,* for Appellee.

DAVIS, C. J.—This is an appeal prosecuted by certain intervenors from a final decree rendered against them by the Circuit Court of the Seventh Judicial Circuit for the State of Florida in a statutory equitable proceeding instituted by the City of Daytona Beach under Section 5106 C. G. L., *et seq.,* 3296 R. G. S., for the validation of $280,000.00 water revenue certificates proposed to be issued by the City of Daytona Beach.

The principal question to be decided on this appeal is whether or not the City of Daytona Beach had the power and authority under its Charter* to fund certain anticipated revenues of its water supply and distribution system by borrowing the present value of several years anticipation thereof, to be repaid with interest, solely out of the water revenues anticipated under contractual terms binding solely and only in the nature of debentures on the special water revenues to be realized, and not constituting either a direct or contingent pledge or obligation of the municipality's taxing power so as to authorize the municipality of Daytona Beach to execute and deliver appropriate certificates of indebtedness purporting to create and express a legal obligation on the part of the municipality for the repayment of

---

*Chapter 10466, Acts of 1925, as amended by Chapter 11461, Acts Extraordinary Session of 1925, as amended by Chapter 11464, Extraordinary Session of 1925, as amended by Chapter 13997, Acts of 1929, as amended by Chapter 13998, Acts of 1929, as amended by Chapter 15158, Acts of 1931, as amended by Chapter 16389, Acts of 1933, Laws of Florida.

the amounts of the certificates out of the water revenues pledged, if, when and as realized and available for that purpose.

It appears from the record that authority was conferred upon the City of Daytona Beach by Section 146 of the City Charter known as Chapter 10466, Acts of 1925, to construct, establish and maintain waterworks and to bore and dig wells, construct reservoirs, lay pipes and to do such other things as may be necessary, essential or convenient for procuring and distributing an abundant supply of good and wholesome water to the inhabitants of the City of Daytona Beach for domestic and other purposes and to protect the property of the city and its inhabitants against fire and to collect reasonable rates, prices and compensation for furnishing and supplying the same.

It further apepars from the record that the City of Daytona Beach, being desirous of obtaining a loan from the United States Government with which to construct certain additions and improvements to the water supply system already owned and operated by it under the foregoing statutory authority, on October 9, 1934, passed an ordinance reciting that inasmuch as it was necessary for the protection of the existing water supply system and for the preservation of the property, safety and health of the inhabitants of the city to construct the additions and improvements aforesaid, that the City of Daytona Beach would authorize and provide for the issue of $280,000.00 in negotiable Water Revenue Certificates bearing interest at 4% per annum, payable semi-annually on the first days of January and July of each year, said Water Revenue Certificates to be executed and issued in substantially the following form:

"No——       UNITED STATES OF AMERICA       $1,000
          "State of Florida
          "County of Volusia
          "City of Daytona Beach
          "Water Revenue Certificate"

"The City of Daytona Beach, in Volusia County, State of Florida, for value received, hereby promises to pay solely from the special fund provided therefor as hereinafter set forth, to the bearer, or, if this certificate be registered as to principal, to the registered owner hereof, on the first day of January, 19____, the principal sum of

ONE THOUSAND DOLLARS

and to pay, from said special fund, interest thereon at the rate of 4% per annum, payable semi-annually on the first days of January and July of each year upon the presentation and surrender of the annexed interest coupons as they severally become due. Both principal and interest of this certificate are payable in lawful money of the United States at the Irving Trust Company of New York, in the City of New York, New York.

"This Certificate is one of an issue of Two Hundred Eighty Thousand Dollars ($280,000) Water Revenue Certificates, all of like date and tenor, except as to maturities, issued by said City, under an Ordinance duly adopted by the Commission of said City, for the purpose of constructing certain improvements of the water supply system of said City. Said ordinance provides that the commission of the said City shall fix and maintain rates and collect charges for the facilities and services afforded by the water supply system, which will provide revenues sufficient at all times to pay the costs of operation, maintenance and repairs of such system, and also sufficient to pay into a special fund, which fund has by said ordinance been created and desig-

nated 'Water Revenue Certificates Sinking Fund,' a sufficient amount of revenue over and above such costs of operation, maintenance and repairs, to provide for the payment of the interest and principal of said certificates as the same shall fall due.

"This certificate with interest coupons hereunto appertaining, is issued upon the following terms and conditions to all of which each taker and owner hereof and of the interest coupons consents and agrees:

(a) Title to this certificate, unless registered as herein provided, and to the annexed interest coupons, may be transferred by delivery in the same manner as a negotiable instrument payable to bearer; and

"(b) Any person in possession of this certificate unless registered as herein provided, or of the interest coupons hereunto appertaining, regardless of the manner in which he shall have acquired possession, is hereby authorized to represent himself as the absolute owner thereof, and is hereby granted power to transfer absolute title thereto by delivery thereof to a *bona fide* purchaser, that is, to anyone who shall purchase the same for value (present or antecedent) without notice of prior defenses or equities or claims of ownership enforceable against his transferor; every prior taker or owner of this certificate, unless registered as herein provided, and of the annexed interest coupons, waives and renounces all of his equities or rights therein in favor of every such *bona fide* purchaser, and every such *bona fide* purchaser shall acquire absolute title thereto and to all rights represented thereby; and

"(c) The City of Daytona Beach may treat the bearer of this certificate, unless registered as herein provided, or of the interest coupons hereunto appertaining, as the abso-

lute owner thereof for all purposes without being affected by any notice to the contrary.

"All acts, conditions, and things required by the Constitution and Laws of Florida, and the Charter of the City to happen, exist and be performed precedent to and in the issuance of this certificate have happened, exist and have been performed as so required.

"This certificate is registerable as to principal alone in accordance with the provisions endorsed hereon.

"IN WITNESS WHEREOF, the City of Daytona Beach has caused this certificate to be signed by its Mayor-Commissioner and City Clerk, under its Corporate Seal, and the interest coupons hereto attached to be executed with the facsimile signature of said Mayor-Commissioner and City Clerk, all as of the first day of January, 1935.

.....................................................
"*Mayor-Commissioner.*

.....................................................
"*City Clerk.*

"Approved as to form and correctness.

.............................................
"*Special City Attorney*"

(Endorsements upon Certificates)

"Validated and confirmed by a decree of the Circuit Court of the Seventh Judicial Circuit, in and for Volusia County, Florida, rendered on the 20th day of November, 1934.

.....................................................
"*Clerk of the Circuit Court,*
*Volusia County Florida.*"

Salient provisions of the ordinance above mentioned were to the effect following: (1) that the City of Daytona Beach would fix and maintain rates and collect charges for the

facilities and services afforded by its water supply system, sufficient at all times (a) to provide adequate revenues to pay the cost, operation and maintenance of the system; (b) to establish and maintain a special fund sufficient to provide for payment of the principal and interest of the proposed certificates, and (c) likewise sufficient to provide a reserve fund for contingencies; (2) that the gross revenues of the water supply system would be deposited, as received, into a special account to be set aside monthly into separate and special funds to be provided and used as in said resolution prescribed for the purpose of assuring payment for the projected improvements and additions; (3) that while any of the Water Revenue Certificates issued under the ordinance should be outstanding, that the City of Daytona Beach would not issue any additional obligations payable from the revenues of said water supply system, unless the lien thereof should be made inferior in dignity to the Water Revenue Certificates authorized by said ordinance; (4) that the City would maintain its water supply system in good condition and would operate the same in an efficient manner and at reasonable cost, and would, under stated conditions specified in a special covenant entered into by the City as a part of said ordinance, maintain insurance on its plant of the kind and in an amount reasonable to be maintained on facilities of a similar nature, the cost of said insurance to be paid as a utility operating costs, and would not, so long as any of the certificates should be outstanding, mortgage, pledge or encumber either the system or its revenues, in whole or in part, nor attempt to sell, lease or otherwise dispose of said system or any substantial part thereof to the prejudice of its obligations proposed to be created in the premises; (5) that no taxes should ever be levied and no moneys ever taken or diverted from any of the city's funds,

except from said pledged water revenues, with which to pay either the principal or interest of any of said Water Revenue Certificates, and (6) that the holders of any of said Water Revenue Certificates should have certain rights to an inspection of books and records of accounts which the city covenanted to set up and correctly keep relating to the maintenance and operation of the city's water supply system.

The Circuit Court adjudged and decreed that the said proposed $280,000.00 of Water Revenue Certificates of the City of Daytona Beach should be and were thereby validated and confirmed, conditioned, however, as specified in the validation decree, as well as in the authorizing ordinance, that said Water Revenue Certificates and interest thereon should be payable solely from the net revenues of the city's water supply system and that no taxes should ever be levied and no money ever taken or diverted from any fund of the City of Daytona Beach for the payment of the principal and interest of said certificates, except the special water revenues therein and thereby pledged for that purpose.

It was interposed as a ground of objection in the Circuit Court, and such is the principal insistence of appellants on this appeal, that because the issuance of the proposed $280,000.00 in Water Revenue Certificates has been predicated upon a contemplated loan of money to be obtained from the United States Public Works administration in the amount of the proposed certificates, in addition to a contemplated grant to the City of Daytona Beach by said U. S. Public Works Administration of the additional sum of $105,000.00 which the city will have turned over to it to be added to the amount to be expended on its water supply system, that the City of Daytona Beach will thereby render itself liable to be called to account to the United States Government for repayment of an aggregate amount of $365,-

000.00, which appellants claim the U. S. Government would become entitled to sue for and recover against the City of Daytona Beach by reason of a total lack of constitutional authority on the part of the disbursing officers of the United States to thus pay out federal funds on a municipal project that appellants contend is in no respect a proper subject upon which an appropriation of United States funds can be lawfully expended.

To support the foregoing objection thus presented by their intervening answers, appellants cite the United States' Supreme Court cases of Bank of United States v. Bank of Washington, Peters (U. S.) 8, 8 L. Ed. 299, and Wisconsin Central R. Co. v. United States, 164 U. S. 190, 17 Sup. Ct. Rep. 45, 41 L. Ed. 399, as authority for their contention that where United States Government money is by the government's officers wrongfully or illegally paid out, it is to be regarded as taken by a recipient who comes into its possession without authority of law to receive it, and in consequence the law creates an implied obligation on the recipient's part to refund it to the government, which obligation can be judicially enforced in a suit at law brought on the government's behalf against the unauthorized taker, claiming as against such taker recovery for the government treasury of its unlawfully disbursed funds, thereby rendering in a case like the present, a municipal corporation such as Daytona Beach, absolutely liable to the United States Treasury for the whole of the $385,000.00 it will procure from the United States' Public Works Administration, should it be later decided by the United States' Supreme Court that no Act of Congress has ever undertaken to authorize disbursements of Federal funds for municipal purposes, or if there is an Act of Congress that does purport to do so, that such is in consequence of organic limitations on Fed-

eral power, unconstitutional and void as authority for paying out moneys from the United States Treasury for such purposes.

It is no doubt true as was said by the United States Supreme Court in the case of Wisconsin Central R. Co. v. United States, 164, U. S. 190, *supra:*

"As a general rule, and on grounds of public policy, the government cannot be bound by the action of its officers, who must be held to the performance of their duties within the strict limits of their legal authority, where by misconstruction of the law under which they have assumed to act, unauthorized payments are made. Whiteside v. United States, 93 U. S. 247; Hawkins v. United States, 96 U. S. 689, and cases before cited. The question is not presented as between the government and its officer, or between the officer and the recipient of such payments, but as between the government and the recipient, and is then a question whether the latter can be allowed to retain the fruits of actions not authorized by law, resulting from an erroneous conclusion by the agent of the government as to the legal effect of the particular statutory law under or in reference to which he is proceeding."

It is likewise no doubt true that should an advancement and loan of Federal funds be obtained by the City of Daytona Beach as proposed by it, that the city may be compelled to submit to a general judgment against it for recovery of the moneys it has received should it be hereafter determined by competent authority that the United States Public Works Administration has disbursed Federal funds to the City of Daytona Beach that the city is without any lawful right to receive, if, under the Constitution and laws of the United States the Federal Government is without power to expend or lend its Federal funds to the city for a purely local mu-

nicipal project, as suggested by appellants. Nevertheless, it does not follow in this case, that validation of the city's proposed issue of Water Revenue Certificates should be refused on the strength of any such bare possibility. This is so, because the municipal authorities are entitled to act upon the presumption that the Acts of Congress and the disbursements of the United States Public Works Administration purporting to be made thereunder, are constitutional. And until the contrary has been duly adjudicated by the Federal Courts, a collateral attack upon the validity of proposed loans of P. W. A. Federal funds to municipal corporations, even for purely local purposes, should not be allowed to be interjected into a judicial validation proceeding authorized by state statute to be brought solely for the purpose of obtaining a declaratory *in rem* judgment adjudicating the validity of a municipality's proposed acts appearing to conform *per se* to the Constitution and laws of the State of Florida in the premises.

So the Chancellor committed no error in denying appellants' motion to dismiss, refusing their motion for a compulsory amendment, or in overruling their written objections to the validation of the proposed certificates, insofar as any objection on the ground of lack of Federal power in the United States Public Works Administration to make a grant and loan of Federal Funds to the City of Daytona Beach was thereby raised.

The authority given to the City of Daytona Beach by its charter to construct, establish and maintain a municipal waterworks in its proprietary capacity, and to do all things that may be necessary, essential or convenient for the purpose of procuring and distributing a supply of good and wholesome water to the inhabitants of the city for domestic and other purposes and to protect the property of the city

and its inhabitants against fire and to collect reasonable rates, prices and compensation for furnishing and supplying the same, is legally sufficient to enable the city in its proprietary capacity, to anticipate its water revenue collections in order to raise the funds needed to provide for essential additions and facilities to its plant to enable the system to serve the purpose for which the statutes provide it shall be maintained. The exercise of such power is an ordinary and usual function of fiscal management incident to the city's authority to own and operate its waterworks system as a public utility. This power of fiscal management the city, in its capacity as owner and proprietor or such utility as a profit making municipal business enterprise, is entitled to exercise and carry out as long as the city does not without particular authorization undertake to mortgage, pledge or obligate the plant itself, or to obligate the taxing power or revenues of the city derived from other sources. State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924.

In both of the cases just cited the authority of a municipal corporation to issue its water revenue certificates of the character and having the attributes here involved, was upheld as against objections of the same nature that were raised by appellants in this case in the court below outside of the Federal proposition hereinbefore discussed in this opinion. In neither of our cases just cited was the asserted fact of an existing emergency deemed material to the municipality's right to issue the certificates, because had the power not been conferred by law, it could not have been created by the mere existence of a supposed emergency. This is so because it is well recognized as an established proposition of municipal law that emergency *per se* cannot create a municipal power that has never been given, nor

can it operate to remove stated restrictions on the exercise of a municipal power that has been definitely limited or denied to a municipality by express or implied provisions of the Constitution or statutes.

It was unnecessary to pass the ordinance authorizing the water revenue certificates as an emergency measure. Nor can the courts be concerned with a decision of the question whether or not it is expedient or wise as a business policy for the city to thus anticipate and borrow against the future earnings of its water supply system in order to enlarge and improve the facilities forming a part of it, so as to extend and increase its capacity and ability for service.

A municipal corporation can and should run the utility enterprises which it may be authorized to own, with the same degree of business prudence, conservative business judgment and sound fiscal management as would be applied to a private enterprise of the same general character. To that end the vestiture of power upon a municipality to own and operate certain public utilities for the benefit of its inhabitants, implies that it is given such power charged with a responsibility to so manage and operate the same and deal with the earnings thereof, as will be for the best advantage of the public service required to be rendered. Such utilities must be considered as a purely business enterprise of which the city is the owner. Whatever municipal officers may be placed in charge of same become responsible to the city as a board of directors for the properties and business represented by such utilities. And as such they have full power to act as would an ordinary board of directors of a privately operated utility, so far as they are not restrained with respect thereto by the state's constitution or statutes or the city's charter or ordinance. Questions of business policy are therefore beyond the scope of judicial interference

unless some charge of negligence, fraud or violation of legal duty is made as a predicate for the attack. None such appears in this case.

We find that the appellants' attack upon the proposal involved in this case is in all essential particulars controlled by what has already been decided by this court in the Miami and Lake City cases hereinbefore referred to, and upon authority of those decisions as to the remaining objections raised but not herein specifically discussed, we think the decree appealed from should be affirmed.

It is therefore considered, adjudged and decreed by this Court that the validation decree in manner and form as entered and appealed from, be and the same is hereby affirmed, and that mandate in conformity with this judgment do issue within ten days as provided for by Section 5108 C. G. L., 3298 R. G. S., Chapter 11854, Acts of 1927, if no petition for rehearing has been filed within that period.

Affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.