STATE v. CITY OF HOLLYWOOD.
179 So. 721.
Division B.
Opinion Filed March 2, 1938.

*Louis F. Maire,* State Attorney, for Appellant;

*C. H. Landefeld, Jr.,* for Appellee.

CHAPMAN, J.—On the 30th day of December, 1937, Honorable George W. Tedder, Judge of the Fifteenth Judicial Circuit, in and for Broward County, Florida, entered a final decree validating and confirming the issuance of water revenue certificates of the City of Hollywood, Florida, under Chapter 12877, Special Acts of the Legislature of 1927, and Chapter 17558, Special Acts of 1935. The proceeds of the sale of the certificates were to be used for public utilities, including a water system and works for supplying the City and its inhabitants with water, and in so doing paying the cost of erecting dams and pumping stations used in connection with the water system and thereby promoting the comfort, education, morals, peace, government, health and general welfare of the City of Hollywood.

The ordinance upon which the petition for validation is predicated is drafted under Chapter 12877, Special Acts of the Legislature of 1927, and Chapter 17558, Special Acts of 1935, and pledges revenues from the water works system, less cost of operation, maintenance and repairs, to liquidate and otherwise retire or pay the said indebtedness.

From the final decree validating and confirming the issuance of the water revenue certificates in the total sum of $200,000.00 an appeal was taken to this Court on the part of the State of Florida by Hon. Louis F. Maire, State Attorney, and it is contended that the final decree appealed from should be reversed for the reasons, viz.:

"1. That no election was had approving the issuance of said certificates as required by Section 6, Article IX, of the Constitution of Florida.

"2. That the certificates because of the covenants contained in the authorizing resolution constitute an indirect or contingent pledge or obligation of the taxing power of the City.

"3. That there was no express Charter authority for the issuance of the said water revenue certificates.

"4. That no attempt was made by the City to comply with the provisions of Chapter 17118, 17119, of the General Laws of Florida, 1935; Section 3100 (6, *et seq.*) Compiled General Laws."

The contention that there is no expressed Charter provision authorizing the issuance of the water revenue certificates on the part of the City of Hollywood is answered by Chapter 12877, Special Acts of the Legislature of 1927, and Chapter 17558, Special Acts of 1935, which last mentioned Act, in part, reads as follows:

"Section 1. That Chapter 12877, of the Laws of Florida, approved June 1, 1927, Entitled 'An Act to Abolish the Municipality Created by Chapter 11519 of the Acts of the Legislature of the State of Florida, approved November 25, 1925, and designated the City of Hollywood, County of Broward, State of Florida, and to Create and Establish a Municipal Corporation to be known as the City of Hollywood; to provide a Charter for said City; to Define its territorial limits; to provide for its Government; and to Pre-

scribe its Jurisdiction,' as amended by subsequent legislation, be and the same is hereby amended by adding thereto three new sections, designated as Section 56, Article 3; Section 57, Article 3; and Section 58, Article 3, as follows:

"Section 56, Article 3. The City of Hollywood shall have the power to borrow money for the erection, purchase, construction, furnishing, rehabilitation, repairing, improving of public buildings, golf courses, water works systems, water softening plants, board walks, sewerage systems, fishing piers, casinos, streets, and parkways, parks, sea walls, public utilities, aviation fields, community and recreation centers, play grounds, baseball fields and sports stadiums, or for any other purpose incident to the carrying out of any power given the City by its Charter, or by laws of the State of Florida, or by the laws of the United States, provided, however, that no money thus secured shall be used to construct, purchase or operate projects or businesses in competition with existing projects or businesses. To secure any such loans the City shall have the full power and lawful authority to execute its notes and other evidences of indebtedness and to secure the same by a mortgage upon such improvements and the lands upon which the same shall be constructed. The City shall have full power and lawful authority to pledge and hypothecate the net revenues from such improvements and lands upon which they stand for the purpose of securing any and all moneys so borrowed. The City shall have full power and lawful authority to issue certificates of indebtedness and promissory notes for the moneys so borrowed and secured by an assignment of all net rentals and all net revenues from the projects so constructed. The City shall also have the full power and lawful authority to mortgage its entire water works system, or any portion thereof, for the purpose of borrowing sufficient money to make necessary repairs and additions to said sys-

tem, or any part thereof, and for the construction of a water softening system and may in addition thereto pledge all net revenues derived from said system until said money so borrowed shall have been fully repaid.

"The City shall also have full right and lawful authority to issue revenue bonds of the City for the purpose of paying the cost of any such improvements or betterments, as well as the necessary expenses incidental thereto, upon such terms and conditions and in such amounts and maturities as may be determined by the Commission by ordinance. All such notes, certificates of indebtedness, revenue bonds and other evidences of indebtedness issued by the City pursuant to this provision shall have and are hereby declared to have all the qualities and incident of negotiable instruments under the negotiable instrument law of the State of Florida. None of such notes, certificates of indebtedness, revenue bonds or other evidence of indebtedness so issued shall be subject to any limitation prescribed by any law or Charter provisions upon the amount of bonds, certificates of indebtedness, notes or revenue bonds which may be issued by the City, nor are the same to be considered when computing the amount of bonds which may be issued under the Charter. Any revenue bonds issued under this Act shall contain a statement on their face that the City shall not be obligated to pay the same nor the interest thereon except from the revenues of such works.

"The City shall have full power and lawful authority to issue bonds of the City to secure any such loans, or to raise revenues for any of the foregoing purposes, and none of the bonds so issued shall be subject to any limitations prescribed by Section 17, Article 22, of the Charter of the City, or any other law or Charter provision under the amount of bonds which may be issued by the City, nor shall any

such bonds be considered when computing the amount of bonds which may be issued under the City Charter.

"Section 57, Article 3. The City shall have full power and lawful authority and shall be eligible and be entitled to receive from the United States of America, or the State of Florida and/or any agency or bureau thereof, any loan or grant of money made available under the provisions of that certain Act of Congress approved April 8, 1935, entitled 'Public Resolution 11, Seventy-fourth Congress, H. J. 117 Joint Resolution making appropriation for relief purposes known and cited as Emergency Relief Appropriation Act of 1935,' and Acts amendatory thereof or supplementary thereto, and under any other Acts, statutes or laws of the United States or State of Florida; and to institute, apply for, negotiate and deal directly concerning any such loans or grants with the President of the United States or with such agencies or officials as he may authorize or designate for that purpose, and thereupon to conclude such negotiations upon such terms, restrictions and conditions as may be enacted by the United States under its laws as a condition to obtain such grant or loan of moneys. This provision shall be cumulative of any general law upon the subject now or hereafter enacted by the Legislature of the State of Florida.

"Section 58, Article 3. The City shall have the full right and lawful authority at any time after one year from the date of the issuance of any tax certificate held by the City of Hollywood against property within the territorial limits of the City of Hollywood to foreclose the same in Chancery in the manner provided for the foreclosure of tax certificates owned by the State of Florida, as provided for by Chapter 14572, Acts of the Florida Legislature, 1929, Extraordinary Session, and amendatory Acts thereto; and further provided that the repeal of said Chapter 14572, Acts

of the Florida Legislature, 1925, Extraordinary Session, and amendatory Acts either prior or subsequent to this Act becoming a law shall in no wise impair or alter the force or effect of this provision."

We therefore hold that this assignment is without merit.

It is next contended that no election has been held in the City of Hollywood for the purpose of obtaining an expression on the part of the qualified voters thereof whereby a majority voted in favor of the issuance of said certificates as required by Section 6, Article IX, of the Constitution of Florida. We fail to find wherein this contention has merit. This Court had before it a similar question in the case of Boykin v. Town of River Junction, 124 Fla. 827, text 838-9, 169 So. 492, when it said:

"The certificates were judicially validated in statutory validation proceedings pursuant to decree of the Circuit Court rendered on April 30, 1936. But the contention is made here that inasmuch as there is no showing in the validation proceedings that said certificates have ever been constitutionally authorized by a vote of the freeeholders pursuant to amended Section 6 of Article IX of the Constitution, that the involved certificates being in legal effect 'municipal bonds' are void and their issuance should therefore be enjoined.

"The proper authorization by the electors in the case of municipal bonds is jurisdictional in the case of certificates that are in contemplation of law nothing more than a form of 'bonds.' So the relief prayed by appellant must be granted, unless the certificates described in the validation proceedings heretofore referred to fall within the specific exception recognized in the following cases heretofore recited by this Court: State v. City of Miami, 113 Fla. 280 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Daytona Beach, 118

Fla. 29, 158 Sou. Rep. 300; State v. City of Clearwater, 124 Fla. 354, 168 Sou. Rep. 546; Wilson v. City of Bartow, 124 Fla. 356, 168 Sou. Rep. 545.

"In the cases just cited, it has been held by us that special revenue certificates of indebtedness issued to fund anticipated net earnings of an *existing* utility may lawfully be issued absent the approving vote of a majority of the frecholder electors given in accordance with amended Section 6 of Article IX of the Constitution, where it affirmatively appears that the object of the funding operation is merely to reinvest the proceeds back into the system from which the anticipated revenues are to be derived, such as for the purpose of reconditioning, repairing, enlarging, extending or improving the existing plant of system, the better to conserve and appreciate its utilitarian earning power and advantages for the benefit of its municipal owner and operator."

It is next contended that the water revenue certificates, or the resolution authorizing the same, are a pledge or obligation of the taxing power of the City of Hollywood. Unfortunately, for appellant, this Court has in previous decisions held contrary to this contention, as was stated in the case of State, *et al.,* v. City of Daytona Beach, 118 Fla. 29, text 39-40, 158 So. 300, viz.:

"The authority given to the City of Daytona Beach by its charter to construct, establish and maintain a municipal waterworks in its proprietary capacity, and to do all things that may be necessary, essential or convenient for the purpose of procuring and distributing a supply of good and wholesome water to the inhabitants of the city for domestic and other purposes and to protect the property of the city and its inhabitants against fire and to collect reasonable rates, prices and compensation for furnishing and supplying the same, is legally sufficient to enable the city in its pro-

prietary capacity, to anticipate its water revenue collections in order to raise the funds needed to provide for essential additions and facilities to its plant and to enable the system to serve the purpose for which the statutes provide it shall be maintained. The exercise of such power is an ordinary and usual function of fiscal management incident to the city's authority to own and operate its waterworks system as a public utility. This power of fiscal management the city, in its capacity as owner and proprietor of such utility as a profit making municipal business enterprise, is entitled to exercise and carry out as long as the city does not without particular authorization undertake to mortgage, pledge or obligate the plant itself, or to obligate the taxing power or revenues of the city derived from other sources. State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924."

It is next contended that there was not a substantial compliance with the requirements and the provisions of Chapters 17118 and 17119 of the 1935 Acts of the Legislature. We do not think or believe this contention has merit. See Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211; Herbert v. City of Daytona Beach, 121 Fla. 212, 163 So. 566.

An examination of the record and briefs of counsel has been made and we hold that the decree entered in the court below is correct and the water revenue certificates properly validated. See State v. City of Miami, 113 Fla. 280, 152 So. 6; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; Board of County Commissioners v. Herrick, 123 Fla. 619, 167 So. 386; Wilson v. City of Bartow, 124 Fla. 356, 168 So. 545; State v. City of Clearwater, 124 Fla. 354, 158 So. 546; State, ex rel. City of Vero Beach, v. Mac-Connell, 125 Fla. 130, 169 So. 628; Williams v. Town of

Dunnellon, 125 Fla. 114, 169 So. 631; State v. Town of River Junction, 125 Fla. 267, 169 So. 676.

There being no error in the record the decree appealed from is hereby affirmed.

WHITFIELD, P. J., and BROWN, J., concur.

ELLIS, C. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

ELLIS, C. J. (concurring specially).—I agree to this opinion upon the ground that the proposed water revenue certificates did not directly or indirectly impose upon the city a potentially coercive obligation to exercise the power of taxation to redeem such certificates or interest thereon. See Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 South. Rep. 356.