## THE STATE OF FLORIDA v. CITY OF KEY WEST, FLORIDA

14 So. (2nd) 707                                           June Term, 1943
June 29, 1943                                                    En Banc
Rehearing Denied July 14, 1943

George A. Worley, for appellant.

Miller Walton and T. S. Caro, for appellee.

TERRELL, J.:

The City of Key West issued bonds for the purpose of acquiring an electric light and power plant hereafter referred to as "the electric system." The principal and interest of the bonds is made payable solely from the net revenues derived from the operation of the electric system and in no way constitute a lien or debt on the City. The full faith and credit of the City is not pledged for their security; neither are they secured by the electric system or any other property of the City. This appeal is from a final decree validating said bonds.

Questions one, two and three have to do with the matter of whether Chapter 8290, Special Acts of 1919 or Chapter 19922, Special Acts of 1939, Laws of Florida, is the Charter of the City of Key West and whether the bonds in question are authorized under either of these acts and if so which one.

Inspection of the two acts shows conclusively that the latter act is the duly authorized Charter of the City of Key West. In so far as the issue of bonds in question is con-

cerned, both acts are similar and the ordinance providing for their issue does not in terms refer to either act but the court below treated Chapter 19922, Special Acts of 1939, as the City Charter and we think he was correct. There was ample authority for the bonds under it. Dickey v. City of Fort Lauderdale, 136 Fla. 241, 186 So. 427.

It is quite true that the powers of the City as expressed in its charter are general. It is authorized to establish, purchase, lease, condemn, or otherwise acquire an electric utility to supply the city and its inhabitants with light, power, and heat and to do all things necessary to that end. Such a power would certainly imply the means to effect all powers expressly granted. Ginsburg v. City of Daytona Beach, 103 Fla. 168, 137 So. 253; State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300; State v. City of Hollywood, 131 Fla. 584, 179 So. 721; State v. City of St. Petersburg, 145 Fla. 206, 198 So. 837, and others.

Whether the bosds so issued are designed as revenue bonds or revenue certificates is not material. Their import will be controlled by their legal effect rather than by the name given them in the ordinance. We find no objection to publication of the ordinance for issue of the bonds by title only as that meets all requirements of the City Charter.

It is next contended that the bonds in question should have been authorized by an approving vote of the freeholders as provided by Section 6, Article IX of the Constitution.

There is no merit to this contention. The ordinance provides in terms that the bonds shall be payable solely from the net revenues from the electric system and from no other source. Neither the taxing power nor the credit of the City is in any way pledged to pay them. In case of default in payment, the holders of the bonds have recourse to nothing but the revenues from the electric system. Board of County Commissioners of Pinellas County v. Herrick, 123 Fla. 619, 167 So. 386; Brash v. State Tuberculosis Board, 124 Fla. 652, 169 So. 218; Kinsey v. Walton County, 136 Fla. 204, 186 So. 418, and many others.

It is next contended that the ordinance providing for the bonds is unconstitutional and invalid because it unduly limits

the freedom of petitioner in the management and control of the electric system in that it delegates unusual powers and duties to the trustee and the consulting engineer.

The courts have recognized a distinction between bonds of a general obligation payable from the taxing power and those of limited obligation payable solely from net revenues of a public utility. The bonds in question are of the latter class and the rights, powers, and duties of the trustee and consulting engineer do nothing more than provide for a sound fiscal business like administration of the electric system to the end that the bonds be paid as they mature with interest. In a situation like this, the utility is operated by the City as a business enterprise in its proprietary capacity rather than in its governmental capacity. State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300.

Closely akin to this question is the one charging that the ordinance is invalid because it provides for the appointment of a receiver for the electric system in the event the bonds go in default for as much as thirty days or in the event the City fails in the execution of any provision of the ordinance for a like period.

What we said in answer to the last question is a complete answer to this question but it is not out of place to cite Dickey v. City of Fort Lauderdale, 136 Fla. 241, 186 So. 427, in support of our conclusion on the point.

It is last contended that Section Eight of the ordinance in so far as it authorizes the City to acquire the controlling capital stock of the Key West Electric Company violates Section 10, Article IX of the Constitution of Florida as follows:

"The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual."

Mr. Chief Justice BUFORD, Mr. Justice CHAPMAN, Mr. Justice THOMAS, Mr. Justice ADAMS, and Mr. Justice SEBRING are of the view that the effect of Section Eight of the ordinance and the procedure proposed to be followed there-

under will make the City a stockholder in a corporation in violation of the quoted provision of the Constitution. They support this conclusion with Wheeler, et al., v. Philadelphia, 77 Pa. State 338. On this point, they think the judgment of the circuit court should be reversed with directions for further procedings. The writer of this opinion is of the view that the judgment of the circuit court was correct and should be affirmed.

It follows that the judgment is reversed with directions.

CHAPMAN, THOMAS, ADAMS and SEBRING, JJ., concur.

BUFORD, C. J., concurs specially in conclusion.

BROWN, J., dissents.

BUFORD, C. J., concurring in conclusion:

I concur in the conclusion in the opinion prepared by Mr. Justice TERRELL.

It is my conclusion that that part of Section 8 of that certain Ordinance approved April 16, 1943, entitled:

"An Ordinance authorizing the acquisition of a complete electric plant and system by the City of Key West and the improvement and extension thereof, authorizing the issuance thereof, authorizing the issuance of $1,500,000 Electric Revenue Bonds of the City of Key West to pay the costs thereof, providing for the security and payment of such revenue bonds and making certain covenants and agreements in that connection, confirming the sale of such revenue bonds, and providing for the manner of the acquisition and operation of such electric plant and system." and which said part of Section 8 reads as follows: "The Mayor and City Clerk, upon the advice and approval of the City Attorney, are hereby authorized and directed to disburse or pay out the necessary amount of the proceeds of said revenue bonds for acquisition of the said properties through the purchase of the controlling capital stock of said company, to vote such stock in the name of the city for the liquidation or dissolution of said company by payment of all liens and obligations and effecting transfer of said properties to the city free and clear of liens and encumbrances, and all of such proceeds remaining after

making the disbursements aforesaid shall be deposited with the Trustee (hereinafter provided for and designated) and shall be set aside by the Trustee into the 'Reserve and Contingencies Fund,' which is created and established in paragraph G of Section 9 of this ordinance, and shall be used for purposes designated in said paragraph. It is the intention by this Section to authorize the Mayor and City Clerk, upon advice and approval of the City Attorney, to do all things for and on behalf of the city deemed necessary preliminary to and in connection with the acquisition of said properties, but, to the extent that further and more specific provision for such procedural detail may prove to be needed, it. may be prescribed and provided for by resolution or resolutions to be hereafter adopted by the City Council.", is in conflict with and repugnant to Section 10 Article IX of the Constitution of Florida.

It is elementary that the municipality may do no act which the Constitution prohibits the Legislature to authorize a municipality to do. Section 10 of Article IX of our Constitution provides, "The Legislature shall not authorize any county, city. borough, township or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for or to loan its credit to, any corporation, association, institution or individual."

It, therefore, follows that the municipality is not authorized either by contract or by ordinance to become a stockholder *with others* in any company, association or corporation. It appears that the part of our Constitution, supra, was taken from the Constitution of Ohio and that a like provision has been adopted in Pennsylvania. In the case of Alter v. Cincinnati, et al., and Ampt v. Cincinnati, et al., 56 Ohio State Reports 47, it was held:

"1. Under Section 6 of Article eight of the Constitution, a city is prohibited from raising money for, or loaning its credit to, or in aid of, any company, corporation or association; and thereby a city is prohibited from owning part of a property which is owned in part by another, so that the parts

.owned by both, when taken together, constitute but one property.

"2. A city must be the sole proprietor of property in which it invests its public funds, and it cannot unite its property with the property of individuals or corporations, so that when united, both together form one property."

I have considered the case of the Western Saving Fund Society of Philadelphia, et al., v. The City of Philadelphia, 31 Pa. State Rep. 175, and do not consider the same in point.

In Wheeler, et al., v. Philadelphia, 27 Pa. State Rep. 338, referring to a like provision of the Constitution of Pennsylvania, it was said:

"This clause in our Constitution, as well as the one in reference to special legislation, was borrowed from the Constitution of the State of Ohio. In Walker v. The City of Cincinnati, before cited, the Supreme Court held that an Act of Assembly authorizing the entire construction of a railroad by a city of the first class, where such road was material to the development of the city, and to empower the local authorities to provide means therefor by the taxation of its citizens, was not in violation of the constitutional provision referred to. Says Chief Justice Scott, in delivering the opinion of the Court: 'The mischief which this section interdicts is a business partnership between a municipal or subordinate division of a state, and individuals or private corporations or associations. It forbids the union of public or private capital or credit in any enterprise whatever. In no project, originated by individuals, whether associated or otherwise, with a view to gain, are the municipal bodies named permitted to participate in such manner as to incur pecuniary expense or liability. They may neither become stockholders, nor furnish money or credit for the benefit of the parties interested therein."

What was said in that case is applicable here because in this instance the municipality proposes to purchase the common stock and a majority of the preferred stock, leaving the balance of the preferred stock outstanding in the hands of minority stockholders and the proceeds to liquidate the business of the corporation which, under the terms of the statute,

infra, may conceivably be continued in the hands of director-trustees for a period of three years.

Any acquisition by a municipality of any stock (less than entire ownership) in any corporation is ultra vires and void and the municipality is without authority to use stock so acquired for any purpose whatever. The municipality by the operation of Section 10, Article IX, supra, is precluded from exercising the powers of "a majority in interest of the stock-holders of a corporation" which is conferred by Sections 611.31, et seq., Fla. Statutes 1941, (referred to supra) and, therefore, the municipality, is not authorized to proceed under the provisions of that part of Section 8 of the ordinance above quoted.

I do not think that that part of the ordinance herein referred to necessarily vitiates the bond issue here under consideration because this provision of the ordinance merely directs procedure by which the acquisition of the utility, that is the properties of the Key West Electric Company, is to be accomplished.

The bonds proposed to be issued are for the purpose of providing a fund with which to acquire the property, which is a lawful purpose.

The decree appealed from, however, fails to recognize the infirmities herein pointed out. So it is, the decree should be reversed with directions for further proceedings.

BROWN, J., dissenting in part and concurring specially:

I concur with Mr. Chief Justice BUFORD and Justices CHAPMAN,, THOMAS, ADAMS and SEBRING that Section 8 of the ordinance and the procedure proposed to be followed thereunder will make the city a stockholder in a corporation in violation of Section 10 of Article IX of the Constitution, which prohibits the Legislature from authorizing any county, city, borough, town or incorporated district to become a stockholder in any company, association or corporation. Under this provision of the Constitution, as I see it, the city cannot become a stockholder in the Key West Electric Company, even temporarily, pending the dissolution or liquidation of the company at the instance of the city. And the winding up of the corporation's affairs after dissolution might take

considerable time. See Sec. 611.31-611.34, Fla. Stats. 1941. This provision of the ordinance violates the spirit and intent, as well as the letter, of the constitutional provision. Furthermore, it might be observed that the dissolution or liquidation of the company might be considerably prolonged for various reasons, among them being possible opposition and litigation on the part of minority stockholders.

Also, Section 8 of the ordinance embraces this language: "And the agreement or proposed contract, dated April 16, 1943, for such acquisition is hereby ratified and confirmed." That contract is not embraced in this record, nor, does it appear to have been filed in the trial court.

While these proposed "bonds" are in effect revenue certificates, I am inclined to the view that the ordinance in question is contrary to the public policy of the State as evidenced by Section 6 of Article IX of the Constitution as amended, as well as by the general law of the State as set forth in Section 172.01-172.10 Florida Statutes 1941. These general statutes authorize a city to construct, purchase, lease or establish and maintain an electric plant, provided that such authority cannot be exercised unless a vote that it is expedient to exercise the same shall have passed the city's governing body by a two-thirds vote of its members, approved by the Mayor, and thereafter ratified by a majority of the voters thereon at an annual and special municipal election to be called and held for that purpose.

I am also of the opinion that the rights and powers delegated by the ordinance to the trustee and consulting engineer therein provided for, amount to an unconstitutional delegation of the discretionary powers and duties which are vested in the city council, at least *unless* some statute shall have been passed by the Legislature authorizing the city to delegate such powers. While this *might* be done under the provisions of our Constitution, it does not appear that any legislative action of this sort has been taken. In my opinion Sections 1 and 25 of the 1919 Charter Act and Sections 8 and 31 of the 1939 Charter Act do not grant this power of delegating by the city council of such authority as that above referred to.

In connection with the questions raised on this appeal, see Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558, Spearman Brewing Co. v. City of Pensacola, 136 Fla. 869, 187 So. 365; Clover Leaf, Inc., v. City of Jacksonville, 145 Fla. 341, 199 So. 923, and 37 Am. Jur., 662, 667-8, which I think support the views above expressed.

For these reasons, I concur in the conclusion that the decree appealed from should be reversed.

ON PETITION FOR REHEARING

TERRELL, J.:

In the main opinion filed June 29, 1943, one of the issues with which we were confronted was whether Chapter 8290, Special Acts of 1919 or Chapter 19922, Special Acts of 1939, Laws of Florida, is the Charter of the City of Key West. We found the two facts to be very similar in their essential provisions but adjudicated the latter act to be the Charter of the City because it was the last expression of the Legislature.

On petition for rehearing, our attention is called to the fact that certain Sections of Chapter 19922, Acts of 1939, were not included in the enrolled act and consequently did not become a part of it. We are further directed to the fact that Sections 74 and 75 of Chapter 19922 provided for a referendum and that it should not become effective until ratified by the people, that Section 75 was omitted from the enrolled bill and that consequently the act as passed by the Legislature was never submitted to the Governor, was never ratified by a vote of the people as contemplated and never became effective.

This being the case, it necessarily follows that Chapter 8290 Special Acts of 1919 is the effective Charter of the City of Key West, so the petition for rehearing is granted and our former opinion modified as stated herein. Otherwise it is adhered to. In other respects, the petition for rehearing is denied.

It is so ordered.

BUFORD, C. J., BROWN, CHAPMAN, THOMAS, ADAMS, SEBRING, JJ., concur.