TERRELL, Justice.
Miami Country' Club, hereinafter referred to as the Club, owns a tract of land in the City of Miami of approximately 120 acres. In lieu ■ of ordinary capital stock, the Club issued its members .450 certificates, designated as “Participating Ownership Certificates.” Said certificates provide that they are issued “subject to the articles of incorporation and By-laws of the Club and subsequent amendments thereto” and that they may be held and transferred only in accordance with the By-laws. Each ' certificate provides that' the owner “as a senior member of Miami Country Club of Miami, Florida, is the owner of an undivided one four hundred fiftieth (1/450) interest of and in the property of said Club of every kind and description which it now owns or may hereafter acquire and is entitled to all the privileges of the Club so long as he shall remain a senior member thereof in good standing.”
Dade County has determined that the lands owned by .the Club, including the buildings and improvements thereon, are needed for county purposes. Having so determined the Board of County Commissioners acting as “Dade County Port Authority” in the manner provided by Chapter 22,963, Acts of 1945, as amended by Chapter 23,296, Acts of 1947, negotiated with the officers and Board of Governors of the Club for the purchase of said properties. A price was agreed on but two-thirds of the owners of “Participating Ownership Certificates” declined to approve the sale as authorized by the By-laws of the Club. The sale having failed for this reason, the County then entered into an agreement with the holders of the “Participating Ownership Certificates” to sell their respective certificates at a price aggregating the approximate sum the County had offered the corporation. By this means the County determined that it could acquire the property of the Club, dissolve the corporation or the Club and thereby vest the title to the lands in the County.
Account of the terms of the “Participating Ownership Certificates” and provisions of section 10, article IX of the F. S.A. Constitution, serious legal impediments were raised as to the right of the County to acquire said certificates, including their effect if so acquired. To resolve these difficulties the instant suit by declaratory decree was instituted to construe the certificates and to determine whether section 10, article IX of the Constitution prohibited the County from purchasing them and thereby acquire title to the real property owned by the Club. The bill of complaint was brought as class suit on behalf of (1) all holders and owners of “Participating Ownership Certificates” and (2) on behalf of all citizens and taxpayers of Dade County. Notice to all parties was duly given as required in bond validation proceedings and the State Attorney was directed to intervene in behalf of citizens, and taxpayers.. At final hearing on the issues made by the bill of complaint, the answer of the defendants and the intervention and answer of the State Attorney and notice to show cause, evidence was taken, arguments and briefs were submitted and the court entered declaratory decree in which he determined:
(1) That the “Participating Ownership Certificates” are mere stock certificates evidencing shares of the capital stock of the Club, a corporation not for profit.
(2) That said “Participating Ownership Certificates” do not constitute evidence of ány present vested interest in the real property of the Club.
*783 (3) That the rights of the owners and holders of such “Participating Ownership Certificates” are as defined in the by-laws of the corporation and may he transferred by simple assignment; and
(4) Section 10, article IX of the F.S.A. Constitution is inapplicable to the situation and that Dade County is not prohibited by said provision of the Constitution from buying and owning all the “Participating Ownership Certificates” of the Club as the means of acquiring title to the real estate of said corporation, and that the amount offered by the County for them represents their fair cash value. The State Attorney has appealed from this decree.
. The first point for determination is whether the “Participating Ownership Certificates” of the Club constitute evidence of ownership of a present title to the real property of the Club, or whether they are mere stock certificates.
There is no dispute about the facts in the case, neither is it questioned by either party that the allegations of the bill of complaint bring it squarely within the provisions of Ready v. Safeway Rock Co., 157 Fla. 27, 24 So.2d 808 and Coral Gates Properties, Inc., v. Hodes, Fla., 59 So. 2d 630. Suit for declaratory decree is brought because of the doubt cast on the construction of the documents brought in question, the applicability of section 10, article IX of the F.S.A. Constitution and the large amount of public funds involved in the transaction.
Chapter 22,963, Acts of 1945 as amended by Chapter 24,296, Acts of 1947 authorizes the Board of County Commissioners, acting as Dade County Port Authority, to acquire the property of the Club by “grant, purchase, gift, devise, condemnation, exchange or in any other manner * * * or any estate or interest therein, upon such terms and conditions as the said County shall by resolution fix and determine”.
It is apparent that the “Participating Ownership Certificates” do not vest title to the interest of the members of the Club in real estate because there are no words of conveyance or description as required by the Statute of Frauds. The law requires that the words of description must be such that a surveyor can go out and locate the land. Bank of South Jacksonville v. Cammar, 89 Fla. 296, 103 So. 827. Another very pertinent reason why the certificates do not constitute muniment or evidence of title, is that they are held subject to the by-laws of the corporation and amendments thereto, paragraph 12 of which provides that the Board of Directors of the Club may sell and convey all its property upon approval of the holders of two-thirds of the certificates. From this and other provisions of the by-laws it is clear that all rights of certificate owners are governed by the by-laws, portions of which are incorporated in the certificates and negative any claim of ownership of a vested interest or title to the property of the Club. The by-laws further provide that in case of dissolution of the corporation the holder of each certificate will receive 1/450 interest in the assets of the corporation. They have been sold from time to time and regarded by the holders as mere stock certificates devoid of any muniment of title. If it were to be held that these certificates constitute evidence of present title to an interest in the real property of the Club, the difficulty in conveying the property would be almost insurmountable. Such a holding would require every owner of the 450 certificates to execute a deed joined by their wives. The interest of each holder would be subject to tax liens, judgments and other liens against it and it might be necessary to secure a deed from each former owner of any interest therein. A condemnation suit would not remove' the difficulty because every person who ever owned one of the certificates would have to be made a party to- the cause.
The next and only other point necessary to adjudicate is whether or not section 10, article IX of the State Constitution inhibits the purchase of the capital stock of the Club as a means of acquiring title to the property of the company, said section 10 being as follows:
“The credit of the State shall not be pledged or loaned to any individual, company, corporation or association; *784 nor shall the State become a joint owner or stock-holder in any company, association or corporation. The Legislature shall not authorize any county, city, borough, township or incorporated district to become a stock holder in any company, association or' corporation, or to obtain or appropriate money for, or to loan, its credit to, any corporation, association,' institution or individual.”
From the best evidence obtainable this provision was an amendment to the Constitution of 1868, adopted some time between 1871 and 1876 and was carried into the Constitution, of 188S. We find it referred to in Holland v. State, 15 Fla. 455 and in Com’rs of Columbia County v. King, 13 Fla. 451. It. is apparent from these decisions and a knowledge of the current history of the period that the purpose of this amendment was. to prohib.it .counties, cities, townships or other incorporated districts of the State from becoming stockholders in or loaning their credit to, any corporation, association, institution or individual.
Such a practice had become prevalent as a result of the passage of Chapter 610, Acts of 1855, F.S.A. § 253.01 et seq., encouraging a liberal system of internal improvement by which Boards of County Commissioners of certain counties were authorized to subscribe for . and. hold certain corporate stock. The practice was also encouraged by the Act of 1853, under which the Florida Atlantic and -Gulf Central Railroad Company was incorporated and every County through .which it ran was authorized to subscribe for its stock with approval of the voters,, and. to issue its bonds for payment of said subscription. The result of the civil war and the collapse of the State’s economy thereafter made payment of these bonds very burdensome. Hence the addition of section 10, article IX to the Constitution to counter debauching the State’s credit and the reckless speculation resulting therefrom.
A good many of the states that were carved out of the public domain had similar provisions in their constitutions. In State v. City of Key West, 153 Fla. 226, 14 So.2d 707, this Court invoked it because the proceeds of the bonds involved were being used to acquire the common and preferred stock of a corporation. We find nothing however in these decisions or the philosophy of the acts involved that would prohibit the Board of County Commissioners of Dade County, acting as the Dade County Port Authority, from acquiring the lands of the Club in the manner proposed. Both parties have agreed to-the terms of purchase, there is no element of speculation involved, both parties have acted; in • good faith and it is . common knowledge that a similar method is employed often in the conduct of business, transactions where corporate interests are involved. This is particularly true when their capital stock is expressed in bonds or other tangible assets. The statute in terms, authorizes the purchase by condemnation or purchase so the County Commissioners, had an ■ election of remedies and declined, to institute condemnation procedings .which they had a right to do.
The judgment appealed from. must be- and is hereby affirmed.
Affirmed.
ROBERTS, C. J., and SEBRING and HOBSON, JJ., concur.