On Rehearing Granted
THORNAL, Justice.
We granted rehearing and have heard further argument.
The factual situation and the contentions which produced the litigation, are adequately presented by the original opinion which attracted majority support for the view that the municipal charter provision authorizing the issuance of bonds to maintain the utility plants precluded the issuance of revenue certificates without an approving vote of the electors of the city. Upon further consideration of the matter, we now have the view that the proposed issue of revenue certificates is valid without the necessity of elector approval.
It is conceded that the proposed Waterworks and Electric Revenue Certificates do not in any respect directly or indirectly pledge any aspect of the taxing power of the City of New Smyrna Beach. Like hundreds of issues of similar municipal securities, including three prior issues of this particular city, the revenue certificates pledge merely the income from utilities plants. These are maintained by the City in a proprietary capacity. The proposed securities are lacking in any element that would classify them as “bonds” which would necessitate an approving freeholder election under Article IX, Section 6, Florida Constitution, F.S.A. Boykin v. Town of River Junction, 124 Fla. 827, 169 So. 492. The cases to support this proposition are legion.
To preclude the application of the established rule, the trial judge relied on a fairly recent decision of this Court in Easterlin v. City of New Port Richey, Fla., 105 So.2d 361. While the writer dissented from the decision of the majority in the last cited case and we now have the view that certain aspects of that decision which collide with the instant opinion should be altered, we also find that there are aspects of the present case which may properly distinguish it from Easterlin.
The Easterlin opinion held for the proposition that if a municipal charter authorizes a city to construct, operate, and maintain a public utility, and in addition merely contains a provision which authorizes the issuance of bonds to be approved by freeholders as a method of accomplishing this charter power, then the authorizing provision regarding bonds should be construed as a complete prohibition against the fulfillment of this proprietary function by any other method of financing. Our analysis of other decisions leads us to the conclusion that implicit in the power to construct the utility is the power to finance it by any legitimate means. Mere authorization to issue bonds in the constitutional sense with freeholder approval essential, is not tantamount to an explicit prohibition against some other legitimate method of financing in the absence of expressed prohibitory language in the charter.
The trial judge and the original majority in this case relied upon Easterlin v. City of New Port Richey, supra.
The conclusion in that case cited for support the decision in North Shore Bank v. Town of Surfside, Fla., 72 So.2d 659, 663. This decision is cited to support the view *149 that when the city was given the power to operate the utility and in another section of the charter was authorized to issue bonds subject to an election in order to construct or improve the utility, then the permissive “bond issuing provision” should be construed as excluding every method of financing otherwise recognized as legitimate. Take note that the “bond authorizing provisions”, both in the New Port Richey Charter and in the New Smyrna Beach Charter are merely permissive. They are not stated to be exclusive nor do they expressly prohibit financing the utility by any other legitimate means. This prohibition is inferred by the majority in Easterlin merely out of the permissive authorization contained in the charter.
Let us now examine the Town of Surf-side case to ascertain whether it supports the conclusion extracted from it in Easter-lin.
A careful examination of Town of Surf-side will reveal that the town proposed to issue certain improvement certificates to be paid out of revenues to be derived in the future from a “franchise tax”, imposed upon Florida Power and Light Company. The town charter provided in substance that no election shall be required for the issuance of bonds “if the initial ordinance authorizes the issuance of bonds payable exclusively from the revenue of a municipal project.” Note that the utilities improvement certificates were not payable from project revenue but rather from a “franchise tax.” At the same time there was another charter provision which provided that “if the initial ordinance authorizes the issuance of bonds not payable exclusively from the revenue of a municipal project”, then such bonds must be approved in an election called for the purpose. As pointed out' in the Surfside opinion, if the security were to be paid entirely out of revenues no election was necessary. At the same time the charter contained a positive and explicit prohibition against the issuance of securities without an election if they were to be paid out of any revenue source other than that exclusively produced by the project. Inasmuch as the Surfside securities were to be paid from a “franchise tax” and not from revenue produced by the project, this Court held that there was “a positive prohibition in the charter against the issuance of such bonds absent the vote of the electorate.” The Surfside judgment was grounded on the conclusion that a “franchise tax” could not possibly fall within the classification of revenue “exclusively” produced by the project.
The difference between this Court’s opinion in Surfside and this Court’s opinion in Easterlin simply is that in Surfside there was an expressed charter prohibition against the type of securities proposed. In Easterlin and in the instant case there was no expressed prohibition whatever. In Easterlin and originally here, this Court merely constructed a prohibition by inference out of certain permissive language authorizing the issuance of bonds. Such language doubtless could be found in substantially the same form in every city charter in the State. The Surfside opinion did not hold that the granting of a permissive power ipso facto precludes and prohibits the exercise of a proprietary municipal function by every otherwise legitimate means. It appears to me to be unfortunate that the Surfside opinion was given this interpretation in Easterlin. Despite the fact that the Easterlin opinion has been on the books for only two years, we must conclude that anything in that opinion inconsistent with the views we express herein are hereby modified.
In State v. City of Miami, Fla., 113 Fla. 280, 152 So. 6, we took cognizance of the fact that in the operation of a self-supporting revenue producing utility a municipality exercises a proprietary function. So long as the improvement of such a utility is financed by securities which are limited solely to anticipated revenues from the project, such securities do no violence to the prohibition against the issuance of bonds with *150 the freeholders’ consent. In the case last cited, it was explicitly held that a municipality could exercise this type of financing power whether or not it acted under special legislative authority given it so to do.In other words, the power to finance in this fashion was implicit in the power to maintain the utility.
In State v. City of Daytona Beach, 118 Fla. 29, 158 So. 300, we clearly held that when a municipality is endowed with the power to acquire certain public utilities then the very act of endowment implies that the city is given that power charged with a responsibility to manage and operate the plants and to deal with the earnings to the best advantage of the public service required to be rendered. Any prohibition or restriction upon such power must be expressly stated in the charter.
In State v. City of Key West, 153 Fla. 226, 14 So.2d 707, 708, the city was given the power to operate its electric system. It proposed the issuance of certain securities supported entirely by revenues derived from the system.
This Court held that the power to establish and operate the plant “would certainly imply the means to effect all powers expressly granted.” We held that the securi-' ties were not bonds and that they could be issued without a vote of the freeholders. We think it of significance that in this case the charter of the City of Key West authorized the acquisition and operation of the plants. As the New Smyrna Beach Charter similarly provides, the Key West Charter provided that the City of Key West “shall have the right to issue and sell bonds for municipal purposes; * * *.” It required that such bonds be approved by the qualified electors and they were limited in amount to a percentage of the assessed valuation of taxable property. There was no specific authorization to the City of Key West to issue the type of revenue securities validated by this Court’s opinion. There was a provision which would authorize the issuance of bonds subject to an election for this purpose. Nevertheless, despite the permissive provision for the issuance of bonds, subject to an election this Court validated the Key West revenue certificates without the necessity of an approving vote of the freeholders. It appears to me that the Key West decision in the light of the Key West Charter is clearly controlling in favor of the validity of the revenue certificates in the instant case.
I further think there may be a distinction implicit in the New Smyrna Beach Charter which places the instant case beyond the pale of Easterlin. In the charter here involved there is a provision to the effect that all general laws applicable to a municipal corporation which are not “in conflict with the charter shall be applicable to the City of New Smyrna Beach.” Section 169.01, Florida Statutes, F.S.A., is certainly a general law which authorizes this type of financing. See State v. City of Miami, Fla., 76 So.2d 294. This charter further provided that “nothing contained in this act shall be construed as limiting the powers of the city commission to enact any ordinance or resolution not in conflict * * with the express provisions of this act.”
Section 7 of the charter mentioned in the majority opinion contains the following:
“The enumeration of the particular powers herein shall not be held or deemed to be exclusive, but, in addition to the powers enumerated herein or implied hereby, the City shall have and may exercise all other powers which under the Constitution and Laws of Florida it would be competent for this paragraph specifically to enumerate.”
Such comprehensive all-inclusive language was not a part of the New Port Richey Charter.
We have not overlooked Senate Bill 683 enacted by the 1961 Legislature. It amends. Chapter 22408, Laws of Florida, Special Acts of 1943 regarding the power of New Smyrna. Beach to issue securities of the instant type. It became effective May 22,. *151 1961 and would not therefore influence the outcome of this litigation.
We, therefore, recede from the original opinion filed herein and upon rehearing granted the decree of the chancellor declining to validate the proposed issue of revenue certificates is hereby reversed.
It is so ordered.
ROBERTS, C. J., and O’CONNELL, JJ., concur.
DREW, J., concurs specially with opinion.
TERRELL and THOMAS, JJ., dissent and adhere to original opinion.
HOBSON, J., dissents.