R. H. BOYKIN v. THE TOWN OF RIVER JUNCTION.

164 So. 558.
Opinion Filed December 12, 1935.

*E. H. Boykin, in pro. per.,* for Appellant;
*Hugh M. Taylor* and *Blake & Taylor,* for Appellee.

DAVIS, J.—The Town of River Junction is a municipal corporation created and existing under and by virtue of

Chapter 9060, Special Acts 1921, Laws of Florida, and exercises all of the powers vested in municipalities under the general laws of Florida, as well as the special powers conferred upon it by its special charter and amendments thereto.*

Purporting to act under and by virtue of the terms and provisions of Chapter 17118, Acts of 1935, General Laws of Florida, the said Town of River Junction proposes to issue and sell "Mortgage Revenue Certificates" as described and provided to be issued by the municipality in accordance with the following resolution:

"A RESOLUTION TO BE ENTITLED:

"A RESOLUTION Proposing the Construction of a Sewerage System and Additions and Improvements to the Water Supply System: The Combining of the Water Supply System and the Sewerage System as a Combined Water Supply and Sewerage System and Proposing the Issuance of Mortgage Revenue Certificates to Finance the Cost of the Construction thereof.

"*Whereas* the Town is without but is in dire need for a Sewerage System and whereas the Town has heretofore been purchasing from the Board of Commissioners of State Institutions water to be supplied to the inhabitants of the Town through the Water Distribution System owned by the Town; and

"*Whereas* it is necessary and desirable that the Town Construct improvements and additions to the Water Supply System of the Town that the Town may have an independent source of an adequate supply of palatable water; and

---

*For the charter amendments see Chapter 9893, Special Acts 1923; Chapter 14333, Special Acts 1929; Chapter 16648, Special Acts 1933.

"*Whereas* the Water Supply System and Sewerage System are so closely related that the two should be combined and operated as one combined system:

"Now THEREFORE, BE IT RESOLVED BY THE TOWN COUNCIL OF THE TOWN OF RIVER JUNCTION:

"SECTION 1. That it is expedient and necessary for the Town of River Junction to construct a Sewerage System and improvements and additions to its Water Supply System for the purpose of supplying an adequate quantity of palatable water to the inhabitants of the Town and of collecting and disposing of sewerage and other liquid wastes and that it is expedient and necessary that the Sewerage System and the Water Supply System be combined and operated as one system.

"SECTION 2. That the cost of construction of the Sewerage System and additions and improvements to the Water Supply System is estimated to be $107,272.

"SECTION 3. That the Town of River Junction as a whole shall be prescribed as the Zone or Area to be served by the Sewerage System.

"SECTION 4. That the said Sewerage System when constructed and the said Water Supply System shall be and hereby are combined as the Water Supply and Sewerage System of the Town of River Junction. That there shall be established just and equitable rates and charges to be paid to the Town of River Junction for the use of the Water Supply and Sewerage System by every person, firm or corporation whose premises are served thereby which charge shall be sufficient at all times to provide a sufficient revenue to pay the reasonable cost of operation of the combined system and for the payment of the principal and interest on the Mortgage Revenue Certificates hereinafter referred to. The amount charged for water furnished and the

amount charged for the services of the Sewerage System shall be as separate items but in one statement for the use of the combined Water Supply and Sewerage System. Upon the failure of any person, firm or corporation to pay within the time required the whole or any part of the amount due the combined system the water service of such person, firm or corporation failing to pay shall be discontinued as provided by ordinance and shall only be restored upon full payment being made of the charges to the combined system together with such reconnection charges as may be provided by ordinance or resolution.

"SECTION 5. That it is the intention of the Town of River Junction to issue negotiable Water and Sewer Mortgage Revenue Certificates in the aggregate principal sum of $59,000 to be dated November 1, 1935, to bear interest at the rate of 4% per annum payable semi-annually on the first day of May and November of each year to be in the denomination of $1000 to be payable in numerical consecutive order, $1000 November 1 of each of the years 1939 to 1945, inclusive, $2000 November 1, of each year in the years 1946 to 1956, inclusive, $3000 November 1 of each year in the years 1957 to 1960, inclusive, $4000 November 1, of each year in the years 1961 to 1964, inclusive, and $2000 November 1, 1965, to be payable solely from and secured by a pledge of the gross income and revenue of the combined Water Supply and Sewerage System after the deduction only of the reasonable cost of operation thereof and the lien hereinafter mentioned. That the ordinance authorizing the issuance of such certificates will provide that such certificates are additionally secured by a lien to be thereby created upon the property and revenues of such combined Water Supply and Sewerage System and will grant a franchise setting forth the terms upon which in the event of

foreclosure the purchaser may operate the combined system. Said ordinance will further provide that no free service shall be rendered by the combined Water Supply and Sewerage System and that the Town of River Junction and all departments thereof shall be subject to the same charges and regulations in force for other users of the combined system.

"SECTION 6. The Mortgage Revenue Certificates herein referred to shall not impose any tax liability upon any real or personal property in the Town of River Junction.

"SECTION 7. Objections to any provision of this resolution shall be made in writing and filed with the City Council and hearing thereupon will be had within thirty days after the passage of this resolution.

"SECTION 8. Notice is hereby given that not earlier than forty days after the passage of resolution the Town Council contemplates the passing of a resolution providing for the issuance of the Mortgage Revenue Certificates herein referred to. It is expected that the difference between the amount of the cost of the project and the amount of Mortgage Revenue Certificates herein referred to will be made available to the Town by way of a grant from the United States of America.

"SECTION 9. This resolution shall be published by posting a copy thereof on the Council Chamber door.

"PASSED in open Council this 5th day of November, A. D. 1935.

"E. L. SHEPPARD,
"Chairman Town Council,
Town of River Junction.

"(SEAL)        "ATTEST:

"R. H. HATCHER,
"Town Clerk,
Town of River Junction."

The present appeal is from a decree of the Circuit Court of Gadsden County denying an injunction and dismissing a bill of complaint filed by appellant as a citizen and taxpayer of the municipality, attacking the defendant municipality's above outlined proposal as violative (among other things) of amended Section 6 of Article IX of the State Constitution, which section prohibits the issuance of municipal bonds, unless the same shall first be approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in the municipality shall participate, said election to be held in the manner prescribed by law therefor. See: Senate Joint Resolution No. 26 (Acts 1929) ratified as part of the State Constitution in November, 1930.

In disposing of this appeal we limit our consideration to the single proposition: "Is the projected issuance of *Mortgage Revenue Certificates* by a municipality, without an authorizing election held in accordance with amended Section 6 of Article IX of the State Constitution, in violation of said amended Section and Article, when the utility to be constructed with the proceeds of the contemplated certificates, together with an existing utility of a similar kind, are proposed to be combined, and their joint revenues and the physical properties of the combined utility, are pledged to secure the payment of the certificates, accompanied by an obligation by the municipality itself to pay for all water and sewerage service received from the utilities as combined—the money therefor being paid into the combined utility accounts which, to the extent of any excess in operating expenses accruing thereto are pledged and obligated to secure the payment of the certificates?"

The power of a municipality already owning and operating public utilities, when so authorized by competent leg-

islation, to issue and sell revenue certificates and to pledge as security for the ultimate discharge of such certificates, the anticipated future *revenues* of its utilities, as reconditioned, enlarged and improved with the proceeds of the revenues so anticipated and presently funded by such means of financing, although no election to authorize same has been called or held pursuant to Amended Section 6 of Article IX of the State Constitution, is fully established in the earlier decisions of this Court rendered in the following cases: State v. City of Miami, 113 Fla. 280, 152 Sou. Rep. 6; State v. City of Lake City, 116 Fla. 10, 156 Sou. Rep. 924; State v. City of Daytona Beach, 118 Fla. 29, 158 Sou. Rep. 300.

But a contractual financial arrangement whereby a municipality issues revenue certificates, although special and limited in terms and character, for the entire acquisition of a new or separate utility, secured by a pledge of the revenues of the utility to be so acquired, as well as by a mortgage upon the physical properties of same to be additionally secured through a contingent franchise to be granted to a purchaser of the utility in the event of a foreclosure decree against the municipality involving it (as attempted to be authorized by some of the provisions of Chapter 17118, Acts 1935, *supra*) is the creation of a conditional indebtedness on the municipality's part in the nature of a legal liability for a capital venture predicated upon the municipality's ordinary municipal credit, and constitutes an interest-bearing assumption of liability for the repayment of the money so borrowed that must be ultimately discharged by taxation if the municipality mortgagor is not to lose its property in the utility whose physical properties, accompanied by a special municipal franchise (property, right, has thus been obligated, and is therefore within the nec-

essarily implied prohibitions of amended Section 6 of Article IX of the Constitution, as that Article and amended section of it, has heretofore been construed by this Court, unless such contractual financial arrangement is duly authorized or ratified by a majority vote of the freeholders of the municipality as contemplated by said amended Section 6 of Article IX of the Constitution. State v. City of Miami, 113 Fla. 280, 153 Sou. Rep. 6 (*supra*); Sholtz v. McCord, 113 Fla. 248, 150 Sou. Rep. 234; Herbert v. Thursby, 112 Fla. 826, 151 Sou. Rep. 385; Martin v. Dade Muck Land Co., 95 Fla. 530, 116 Sou. Rep. 449; Advisory Opinion to Governor, 94 Fla. 967, 114 Sou. Rep. 850; Amos v. Mathews, 99 Fla. 1, 126 Sou. Rep. 308. See also: Evans v. Holman, 244 Ill. 596, 91 N. E. Rep. 723; Lobdell v. City of Chicago, 227 Ill. 218, 81 N. E. Rep. 354; City of Joliet v. Alexander, 194 Ill. 457, 62 N. E. Rep. 861; Leonard v. City of Metropolis, 278 Ill. 287, 115 N. E. Rep. 813.

In State v. City of Miami, *supra,* the three outstanding groups of American decisions dealing with the subject of constitutional law now before this Court, were discussed and therein classified as follows: (1) Those which affirm the proposition that municipal obligations which are not payable from taxes, but are provided to be payable solely from the revenues of an independent revenue-producing asset or utility, are not debts of a municipality and therefore not within the purview of a constitutional provision limiting the amount or manner of creating municipal indebtedness; (2) those which limit the first stated doctrine to those obligations which do not undertake to pledge any of the existing revenues of a plant or other revenue-producing asset *in esse,* or which relate to extensions or additions made payable from the gross income of an enlarged plant or other

revenue-producing asset of the municipality benefited by the financing; and (3) those cases which hold that to permit a public corporation to borrow any money under a contractual device of its repayment with interest, even though it is expressly provided therein that the municipality will not be liable generally for its repayment, but that the lender shall look solely to pledged municipal property or assets, or the income thereof, as security, in effect annuls an intended constitutional debt creation restriction such as that to be found in our amended Section 6 of Article IX of the Florida Constitution, and is therefore void as an indirect scheme designed to strike down an intended constitutional safeguard against municipal profligacy.

With the exception of the precisely declared qualification enunciated in the case of State v. City of Miami, *supra*, in favor of the view that, when acting under sufficient legislative authority given it to do so, a municipality, owning in a proprietary or corporate capacity, a utility from which it is already deriving annual unpledged net revenues which it is admittedly empowered to expend as it sees fit, as and when received by it, for the purpose of repairing, extending, enlarging and improving the utility it already owns, may, by means of special and limited revenue anticipation certificates, binding solely and only in the nature of debentures on the special utility revenues expected to be realized in the future, and not constituting a direct, indirect nor contingent pledge of the municipality's taxing power, presently fund the anticipated revenues by borrowing the present value of same, to be repaid with interest solely out of the revenues anticipated under contractual terms which affirmatively negative any and all legal obligations on the part of the municipality for the payment of the certificates as an indebtedness against anything except the special rev-

enues pledged, if, as and when realized, and available for that purpose, the decisions of this Court in our earlier cases are in virtual harmony with those authorities hereinbefore specified as being within the third class of cases to which we have just made reference. See: Sholtz v. McCord, 112 Fla. 248, 150 Sou. Rep. 234; Herbert v. Thursby, 112 Fla. 826, 151 Sou. Rep. 285; Martin v. Dade Muck Land Co., 95 Fla. 630, 116 Sou. Rep. 449.

We therefore hold on this appeal that the challenged financial arrangement and proposal of the Town of River Junction adopted in accordance with Chapter 17118, Acts 1935, Laws of Florida, as hereinbefore described in its resolution as quoted in this opinion, is and will be violative of amended Section 6 of Article IX of the Constitution of Florida unless and until same shall first be submitted to and duly approved by a majority of the votes cast in an election duly called and held in said Town of River Junction in which a majority of the freeholders who are qualified electors residing in such municipality shall participate.

It was therefore error for the Chancellor to have refused the interlocutory injunction and dismissed appellant's bill of complaint, for which error the decree appealed from should be and the same is hereby reversed, with directions to have such further orders and decrees in this cause, as shall not be inconsistent with the holding of this opinion.

Reversed with directions.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.