Spearman Brewing Company v. The City of Pensacola; L. C. Hagler, as Mayor; V. A. Bruno, as City Manager; and J. E. Frenkel, as City Clerk Comptroller of said City.

187 So. 365.

Division A.

Opinion Filed March 7, 1939.

Rehearing Denied April 3, 1939.

*Herbert Latham,* for Appellant;

*J. McHenry Jones,* for Appellees.

THOMAS, J.—Chapter 9298, passed by the Legislature and approved in 1923, provides a comprehensive plan for the construction of improvements by municipal corporations and the assessment of the costs, or any part thereof, against the abutting property.

The initial step in the procedure is the passage of a resolution describing the improvement, giving its location, and designating the portion to be paid by the owners of the adjoining property. Contemporaneously with the adoption of the resolution, there must be on file the plans and specifications of the proposed construction. Subsequently, an assessment roll must be prepared and published, and a hearing held for the purpose of adjusting and equalizing the assessments. These charges remain liens on the property improved, and may be paid in ten equal yearly installments.

Under the Act, the governing authority was given the power, after the equalization, approval and confirmation of the levy, to issue bonds to the amount of seventy per

cent of the total of the special assessments, and, on completion of the work and its acceptance by the city, to issue bonds for the remaining thirty per cent of the total cost. All of the bonds authorized by the act were to be general obligations of the municipality, pledging its full faith and credit.

In 1930, Section 6 of Article IX of the Constitution was amended, so that the same now reads as follows:

"Section 6. The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the counties, districts or municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes cast in an election in which a majority of the freeholders who are qualified electors residing in such counties, districts, or municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this law shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such counties, districts, or municipalities."

The city of Pensacola, by a resolution adopted October 7, 1938, is attempting to improve certain streets within the paving district of the city and to assess fifty-five per cent of the cost thereof against adjoining and contiguous land. It is sought to issue "time warrants," to the amount of seventy per cent of the assessed cost, payable to bearer from a "special fund provided therefor." This fund is to be created from the amounts paid by adjoining owners from time to time, and in the "time warrants" the city undertakes to "use diligence to collect such special assessments and will institute suit to enforce the payment of the same in the event of failure of owners to pay the special assessments when same become due."

Obviously the parts of the statute, 9298, *supra,* which refer to the issuance of general obligations of the municipality, pledging its full faith and credit for the payment thereof, have been rendered null and void by the above quoted amendment to the Constitution, and the question arises whether the city of Pensacola has authority to issue its obligations, or "time warrants," as they are described in the resolution of the city council, pledging specific liens against the property to be benefited by the prospective street improvements.

In dismissing the bill of complaint brought to restrain the city from issuing, signing or executing the so-called time warrants, the Circuit Judge expressed the opinion that revenues from special assessments do not differ from anticipated increased revenue from improvements' and additions to an existing municipal utility, and cited the following five cases, which we will now discuss:

In the first, the ruling was that the city of Daytona Beach, in its capacity as owner and proprietor of a utility, could pledge anticipated revenue from the plant for essential additions so long as it did not "mortgage, pledge, or obligate the plant itself, or obligate the taxing power or revenues of the city derived from other sources." See State v. City of Daytona Beach, 118 Fla. 29, 158 South. Rep. 300, text 304.

This was likewise the decision in Voorhees v. City of Moore Haven, 125 Fla. 149, 169 South. Rep. 641, and State v. City of St. Augustine, 125 Fla. 173, 169 South. Rep. 648.

In Roach v. City of Tampa, 125 Fla. 62, 169 South. Rep. 627, the same principle was applied, although in that case the property involved was a hospital. As in the others, there was no attempt to hypothecate any of the assets of the city other than the net income from the property.

A distinction has been drawn by this court between encumbrances of specific property and pledges of dividends resulting from the expansion of businesses operated by the city in a corporate capacity, to the payment of the loan making such extension possible.

In Boykin v. Town of River Junction, 121 Fla. 902, 164 South. Rep. 558, there was discussed a plan to construct combined sewerage systems, improvement to the water supply system, and to issue negotiable revenue certificates payable from and secured by a pledge of the gross income of the combined systems and a lien on the property and the revenues thereof. This was held to be an attempted creation of an additional indebtedness of the city constituting "an interest bearing assumption of liability for the repayment of the money so borrowed that must be ultimately discharged by taxation if the municipality mortgagor is not to lose its property in the utility," and contrary to the provisions of amended Section 6 of Art. IX, Const., *supra,* 164 South. Rep., text 561.

The holdings of this Court thus far seem to be that the city may mortgage the prospective income from the extension of an existing utility plant which it operates in a proprietary capacity, so that it may meet increasing demands for the supply of electricity, water and the like, but there is a vast difference in the city acting as the operator of a municipal plant, and exercising the functions of paving its streets. Of course, it is obvious that there can be no income from such an undertaking, and the monies to be received by the city will be derived from a specific lien on the property of taxpayers.

In State v. City of Miami, 113 Fla. 280, 152 South. Rep. 6, the court classified the decisions relevant to the question we are now considering and segregated them into three groups, the third holding that permission given a

city to borrow any money under contract for its repayment, with interest, even though stipulated that there would be no general liabliity, was in effect an indirect attempt to violate restrictions such as set out in Sec. 6 of Art. IX, Const., *supra,* as amended.

Following this decision, this Court in the case of Boykin v. Town of River Junction, *supra,* speaking through Mr. Justice DAVIS, elected to adopt this *rule,* with the *exception* given in State v. City of Miami, *supra,* therefore the conclusion is reiterated that any attempt on the part of a municipality to borrow money and enter into a contract to repay the same with interest, even though it is stipulated that there shall be no general liability on the obligation, is not permissible under the Constitution, as amended, without the required election although a municipality in a corporate or a proprietary capacity may make enlargement of an existing utility plant which it owns, and pledge the anticipated revenue therefrom to repay the amounts advanced and reinvested in the property.

Feeling thus, we decide that the city of Pensacola is without power to issue the time warrants payable from a special fund created by the discharge of liens against specific property although liability is attempted to be limited to such resources.

In forming this opinion, we have kept in mind the utterances of this court that any reasonable doubt that evidences of indebtedness may be issued without the approval of the voters at an election for the purpose, will be resolved against the validity of such instruments. Williams v. Town of Dunnellon, 125 Fla. 114, 169 South. Rep. 631; Kathleen Citrus Land Co. v. City of Lakeland, 124 Fla. 659, 169 South. Rep. 356.

The decree of the Circuit Court is reversed.

 875

TERRELL, C. J., and WHITFIELD, BROWN and BUFORD, J. J., concur.

CHAPMAN, J., dissents.