CLOVER LEAF, INC., Appellant, v. CITY OF JACKSONVILLE, Appellee.

199 So. 923
En Banc
Opinion Filed December 20, 1940
Rehearing Denied February 10, 1941

342

*Sears & Shea,* for Appellant;

*Austin Miller* and *Eli Finkelstein,* for Appellee.

THOMAS, J.—The chancellor dismissed a bill of complaint filed by the plaintiff, Clover Leaf, Inc., by which it was

sought to enjoin City of Jacksonville from issuing paving certicates for the amounts assessed against abutting property for the improvement of Main Street from Bay Street to Hogan's Creek.

Under the ordinance passed by the city council and approved by the mayor, the city commission was authorized to expend for the work approximately forty thousand dollars, that being the amount of the estimate accompanying the plans and specifications theretofore prepared. Power was given to assess two-thirds of the cost among the lots abutting the street in proportion to the foot frontage, after deducting from the whole cost the amounts to be contributed by the users of said street," and one-third of the total cost which was to be borne by the city. The total expenditure to be assessed against the property approximated twenty-four thousand dollars.

It was provided in the ordinance that after the assessments had been confirmed, the city commission should issue separate certificates, against the respective pieces of property benefited, containing an assignment to the bearer of the lien entered against the land. They were to be due in ten equal annual installments, bearing interest payable annually. All work was to be done by the lowest and best responsible bidder, and the city commission was empowered to make such contracts for the work as might be necessary, having respect for the city charter and Chapter 20100, of the Laws of Florida, Special Acts of 1939.

By the terms of this enactment of the city council, the estimated cost "to each user of the street for said work, including all estimates heretofore and hereafter made, shall be a lien superior to all other liens, except only liens for taxes, upon all the said property, including the franchise of such user of said street."

We turn now to the law passed by the Legislature of

1939, upon which the ordinance adopted by the legislative body of the city was based, and we shall attempt to give so much of it as will make comprehensible the general plan by which the improvement is sought to be accomplished and the questions of law which become apparent when this Act is read in the light of amended Section 6 of Article IX and expressions of this Court on the subject.

Under the Act the city commission may adopt a resolution declaring the necessity for certain street improvement, and send the same, accompanied by plans and specifications for the work and estimates of the cost to the city council. The latter body may then by ordinance require the city commission to cause the work to be done by the lowest and best bidder, two-thirds of the expenditure to be a lien upon the abutting property and one-third of the cost to be paid by the city, except where the street is used by street railway company or other user, in which event "the amount contributed by the user" shall be first deducted and the city shall pay one-third "and have a lien for two-thirds . . . of the remainder." A further step in the plan is the preparation by the city tax assessor of an estimate of the amount of the liens for the work which "the city will claim against each of such lots." It is provided that a hearing shall be held to determine the correctness of the assessments, and when these are finally approved they "shall stand fixed as the amount of the city's lien," and the city commission must issue a separate paving certificate against each tract assessed.

Next, the municipality is required to let a contract for the work and material to the lowest and most responsible bidder. Option is given under the Act for the city to require the contractor to receive the certificate at par in full payment of the work "when completed." Recordation of the liens is accomplished by entering them in a book provided for the purpose and they may be cancelled upon

payment to the city treasurer of the amounts shown to be due. "Where the City of Jacksonville has acquired or may hereafter acquire liens for improvements," these encumbrances may be transferred by delivery of the certificates, and the liens they evidence may be foreclosed by the holder in equity.

It is provided in the Act that these paving certificates shall not be obligations of the city and that the payment of them and the interest on them shall not be guaranteed by the municipality. The resolution, which was a part of the file in the case, contains no allusion to this particular statement in the Act with reference to the responsibility for the payment of the certificates.

The appellant takes the position that the whole plan should be held invalid because of the decisions of this Court in the case of Spearman Brewing Company v. City of Pensacola, 136 Fla. 869, 187 So. 365, while the appellee contends that that case and this one are not analogous because the City of Pensacola: (1) had not been authorized by the Legislature in the manner in which this power was given to the City of Jacksonville to make special improvements; (2) was proceeding under an Act (9298) which had been voided by the amendment to the Constitution; and (3) was obligated to use diligence in the collection of the special assessment liens.

Briefly, that city attempted to issue time warrants representing a part of the cost of street improvements, the obligations to be discharged by money accumulated in a fund created from the amounts paid by adjoining property owners. The original law under which this work was attempted (9298) provided that bonds could be issued which would be general obligations of the maker. We held that this part of the Act had been nullified by the amendment to the Constitution prohibiting the issuance of such obligations

without an approval of the majority of the freeholders in an election in which more than half of the qualified freeholders participated, but we went further and decided that the plan could not be pursued, even though the municipality undertook to repay the time warrants only with receipts from the liens and their responsibility was confined to the collection of those liens for that purpose, thereby avoiding any general obligations to pay the same with money from other sources.

Another review of this decision and the ones on which it was based do not lead us to conclude that we should recede from our former view, or that the distinctions drawn by the appellee are vital.

We state again that we have taken the position, beside other tribunals which hold that a municipal corporation may not borrow money under a devise for repayment even where it is expressly provided that there shall be no general obligation, and that the lender shall look solely to the pledged property (Boykin v. Town of River Junction, 121 Fla. 902, 164 So. 558), and the only exception we have recognized is that a municipal corporation may extend, enlarge or improve a then existing utility which it owns in its proprietary or corporate capacity, and restrict the retirement of the obligations incurred for that purpose to the income received from it (State *ex rel.* v. City of Miami, 113 Fla. 280, 152 So. 6).

In the case of Boykin v. Town of River Junction, *supra,* this Court referred to the exception in the case of State v. City of Miami, *supra,* as a "precisely declared qualification" to the rule that a city may not borrow money under a contractual devise for its repayment, even if it is expressly provided that there shall be no general liability and that the lender shall look to the pledged municipal property, assets

or income as security, where there is a constitutional inhibition "against municipal profligacy."

The rule we were attempting to follow in all of the cases that we have cited was the one we thought would give full effect to the amendment of the Constitution restricting the issuance of bonds to those approved in an election where a majority of the freeholders took part. It is true that the word "bonds" is used in the amendment, while in the instant case the evidences of indebtedness are termed "paving certificates"; in the Spearman case the title of the evidences of indebtedness was "time warrants"; in the Miami case, "Water revenue certificates"; and in the River Junction case, "mortgage revenue certificates."

The criterion is not the name given the instrument issued by the city as evidence of the loan by the holder or bearer to construct or improve streets and the like, or to extend and improve utilities, but whether the scheme attempted expressly or impliedly violates the restrictions of an amendment adopted by the people for the very purpose of obviating unrestrained expansion at the cost of the taxpayers. After the period of almost uncontrolled incurrence of debt by municipal corporations in 1925 and succeeding years, of which all know and we take judicial notice, restraint on the part of the people was decided upon so that governing authorities could not, without the approval of those who would bear the burden, encumber the property of the taxpayers, and that being the purpose of the amendment, we will undertake to carry it out in the determination of litigation such as this regardless of the term given the form of the obligation, or the manner in which the indebtedness is assumed, if there is danger that the real spirit of the constitutional prohibition will be violated.

It is not important that in the Spearman case the City of Pensacola had not been authorized by the Legislature to

make improvements in the manner described here, because no matter what power was attempted to be given by the Legislature, it could avail the city nothing if it violated the organic law. It was not a determining factor that city was proceeding under an Act which has been rendered partly ineffectual by the amendment, nor was it controlling that it had a special duty to use diligence in the collection of the liens of the various property holders.

The crucial point in the matter with which we are dealing is the same as the one in the cited cases, namely, the possible infringement, expressed or implied, of the Constitution. We are not able to appreciate any real distinction between those cases and this one. We are committed to the rule we have stated and we have given the only exception which we have countenanced. There is no practical difference in the plan described in Chapter 20100, *supra,* and the one apparent in the Spearman case. Here, as there, appears the stipulation that the city will not guarantee the payment of the certificates and that they shall not be obligations of the city, yet the city lets the bid, performs all clerical work with reference to the liens, originally holds them and assigns them, pays for some part of the improvement not exceeding one-third, and generally performs all the acts incident to the project that was necessarily done in the scheme under Chapter 9298.

It is not incumbent upon the municipality to deliver the liens against the abutting property to the constructors in payment of amounts accruing under the contract, but only an option is given to require the contractors to accept the certificates in payment for the work performed and the material furnished. We are not advised by the record the source from which the money will be taken to pay the city's part and to finance the improvement if this option is not exercised. It seems fair and logical to assume that if the

city has in its exchequer sufficient funds budgeted and raised from taxes in the past to finance the paving of the street in question, there would be no need for the procedure to which they have resorted.

We apprehend that there is bound to be some responsibility on the part of the city to the contractors because it is plain from the scheme outlined in the Act and in the ordinance that a contract is let to which the municipality will be a party before the work is done, and it is not easy to see how the city could escape any liability whatever under such an agreement.

We fully understand the representations of the city about the difficulty of issuing bonds when only a certain area is to be paved because of the impracticability of securing the attendance at the polls of a majority of all of the freeholders in the entire city; however, this apparent hardship is incident to, and a natural result of, the operation of the constitutional amendment obviously intended to curb municipal corporations in incurring indebtedness. It was not the intent of the people, nor is it our purpose, to present an obstacle to normal progress, and we have been motivated, in adopting the rules to which we have referred, only by a desire to preserve the true spirit of the amendment.

By way of reiteration, we say that what is attempted by the city is barred by the rule we have adopted and does not fall within the exception we have made.

It is not our position that it is impossible for work to be done under the statute without transgressing the inhibitions of the Constitution but under the circumstances appearing in this record it is not certain that the certificates contemplated and the procedure outlined will not result in such a violation.

It is therefore ordered that the order dismissing the bill of complaint be and the same is hereby—

Reversed.

TERRELL, C. J., WHITFIELD, BROWN, CHAPMAN and ADAMS, J. J., concur.

BUFORD. J., dissents.

BUFORD, J. (dissenting).—I do not think this case is ruled by the opinion and judgment in the case of Spearman Brewing Co. v. City of Pensacola, 136 Fla. 869, 187 So. 365. In this case under the statutes cited in the majority opinion the city assumed no obligation involving any deferred payments for contemplated street improvements and therefore the provisions of Section 6, Article IX of the Constitution are not applicable.