67 So.2d 673 (1953)
CITY OF ORLANDO
v.
STATE et al.
Supreme Court of Florida. En Banc.
October 30, 1953.
Campbell Thornal of Baker & Thornal, Orlando, for appellant.
Murray W. Overstreet, Kissimmee, for appellees.
SEBRING, Justice.
The City of Orlando has appealed from a decree denying its petition for the validation of certain street improvement certificates which the municipality proposed to issue under an ordinance authorizing such issuance without an approving vote of the freeholders of the city.
By the ordinance the city agreed to establish a special fund designated a "Certificate Fund" and to deposit therein all proceeds derived from the special assessment liens which the city agreed to levy against the private property to be benefited by the proposed improvements. The form of the certificates to be issued contained a provision that it was to be "payable solely from and secured by a lien upon and pledge of the Certificate Fund * * *. This Certificate does not constitute an indebtedness of said City * * * and * * * holders shall never have the right to require or compel the exercise of the ad valorem taxing power of said City, or the taxation of real estate in said City * * * or the making of any sinking fund, reserve or other payments provided for in the ordinance authorizing this issue of Certificates."
On express authority of Clover Leaf, Inc., v. City of Jacksonville, 145 Fla. 341, *674 199 So. 923, 926, the trial court held that the proposed certificates were bonds within the contemplation of section 6, Article IX of the Florida Constitution F.S.A., and consequently could not be lawfully issued without an approving vote of the freeholders. The propriety of this ruling is the only question presented for determination.
There can be no escape from the fact that the plan of financing presented in the instant case is similar in many respects to the plan of financing before the court in Clover Leaf, Inc. v. City of Jacksonville, supra. However, the situation here presented differs in at least one particular: Under the proposed contract in the Clover Leaf case it was "not incumbent upon the municipality to deliver the liens against the abutting property to the constructors in payment of amounts accruing under the contract, but only an option is given to require the contractors to accept the certificates in payment * * *." This court was not advised by the record in the case of "the source from which the money" would be paid "to finance the improvement if [the] option [were] not exercised." In the case at bar there is no such uncertainty. The City of Orlando is unquestionably obligated under the enabling ordinance to asssess the liens and retire the certificates solely from the proceeds derived therefrom. Payment from any other source is positively prohibited. The general credit of the city cannot therefore in any conceivable eventuality become involved, nor can its taxing power ever be called into play to liquidate the obligation.
But be that as it may, there can be little doubt that decisions of this Court rendered subsequent to Clover Leaf, Inc., v. City of Jacksonville, supra, are sufficient to sustain the issuance of the certificates here under question. For the common rationale of these later decisions is that municipal obligations of the nature involved, that are not payable from ad valorem taxes but are to be liquidated solely from the proceeds of an independent revenue producing asset or source, do not constitute a bond of the municipality so as to require an approving vote of the freeholders under section 6, Article IX of the Florida Constitution.
Most recently, special obligation paving bonds secured by a pledge of the municipal utility service tax and parking meter receipts have been validated by this Court on the ground that: "The monies to be placed in the special fund are to be derived from revenues which are excise in nature, and the buyers of the obligation will be on notice that payment cannot be had or expected from any other source of revenue. State v. City of Daytona Beach, Fla., 42 So.2d 764. In State v. City of Winter Park, 160 Fla. 330, 34 So.2d 740, 741, sewer revenue bonds of the City of Winter Park, payable from a utility service tax in addition to sewer revenues, were held valid without freeholders' approval "because they [were] not secured by a pledge of the taxing power". Recreational bonds secured by a pledge of excise taxes on utilities, together with recreational revenues, were approved on the same principle in Schmeller v. City of Ft. Lauderdale, Fla., 38 So.2d 36.
We think it plain, under the rule laid down in the above cited cases, that obligations secured solely by special assessments do not come within the prohibition of Article IX, Section 6 of our Constitution, since, historically, a pledge of special assessments has never been considered to be a "pledge of the taxing power." Cooley on Taxation (3rd Ed.), Vol. 2, p. 1153. Certainly the law in this state is settled that "an ad valorem tax and special assessment, though cognate in immaterial respects, are inherently different in their controlling aspects". Klemm v. Davenport, 100 Fla. 627, 129 So. 904, 908, 70 A.L.R. 156. "A `tax' is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform. A `special assessment' is like a tax in that it is an enforced contribution from the property owner * * * but it is inherently different and governed by entirely different principles. It is imposed upon the theory that that portion *675 of the community which is required to bear it receives some special or peculiar benefit in the enhancement of value of the property against which it is imposed as a result of the improvement made with the proceeds of the special assessment. It is limited to the property benefited, is not governed by uniformity, and may be determined legislatively or judicially." 100 Fla. at page 631, 129 So. at page 907. See also Crowder v. Phillips, 146 Fla. 440, 1 So.2d 629; Whisnant v. Stringfellow, Fla., 50 So.2d 885.
In accordance with this distinction, this Court has in at least two instances approved the financing of municipal improvements by the pledge of special assessments without requiring a city-wide freeholders' vote under Article IX, Section 6 (although in most cases that have been before the Court approval by vote or petition on the part of the freeholders in the district affected was provided for by the governing law of the municipality). Paving certificates expressly payable from funds derived from levy of special assessment liens on abutting property, and from utilities service taxes, were approved in State v. City of Pensacola, Fla., 40 So.2d 569, with the comment that "the general taxing power of the City of Pensacola is [in] no manner pledged or obligated to pay the pavement certificates nor to guarantee the making up or payment of deficits, if any arising from the sale of the paving certificates." Elsewhere in the same opinion it is said that "the certificates as validated do not directly, or indirectly, obligate the City of Pensacola to levy or collect an ad valorem tax on real estate within the city, neither is the taxing power of the city pledged for their payment." Similarly, a decree approving water revenue certificates payable from special benefit assessments, and from water revenues, was affirmed by this Court in Follansbee v. City of Ft. Lauderdale, 156 Fla. 368, 22 So.2d 815.
We think these later cases take care of any uncertainty that might have been present in the mind of the trial judge by reason of the language used in Spearman Brewing Company v. City of Pensacola, 136 Fla. 869, 187 So. 365, or Clover Leaf, Inc., v. City of Jacksonville, 145 Fla. 341, 199 So. 923, as to the validity of the certificates sought to be validated, and settle the issue in favor of validation of the paving certificates proposed to be issued under its ordinance by the City.
It follows from the conclusions reached that the decree appealed from should be reversed with directions that the cause proceed in accordance with this opinion and judgment.
It is so ordered.
ROBERTS, C.J., and TERRELL, HOBSON, MATHEWS and DREW, JJ., concur.
THOMAS, J., concurs specially.
THOMAS, Justice (concurring specially).
Because of the various expressions of the Court on the subject since I wrote the opinions in Spearman Brewing Company v. City of Pensacola, 1939, 136 Fla. 869, 187 So. 365, and Clover Leaf, Inc., v. City of Jacksonville, 1940, 145 Fla. 341, 199 So. 923, I concur in the conclusion here reached.