James R. White Mayor Town of South Flomaton Flomaton Alabama
QUESTION:
May the Town of South Flomaton finance the purchase of a fire truck through revenue sharing funds from the state and place a lien on the fire truck without the approval of the voters of South Flomaton?
SUMMARY:
A municipality may pledge any non ad valorem tax revenues (including its guaranteed entitlement to revenue sharing funds under part II of Ch. 218, F. S.), if available and not previously encumbered, to purchase a fire truck to provide fire protection within municipality. In the absence of an approving referendum by the municipal electorate, however, a municipality may not finance, and is constitutionally inhibited from financing, the purchase of the fire truck by borrowing money and giving a lien or mortgage on the property to be purchased (or other assets or property of the town) as further or additional security for the loan or other obligation of the town.
According to your letter, the Town of South Flomaton proposes to purchase a fire truck to provide fire protection within the municipality. The purchase is to be financed by a loan from a local bank which the town intends to repay `primarily through Revenue Sharing Funds from the State of Florida' over a period of approximately 10 years. In addition, the town plans to give the bank a lien on the fire truck as additional security for the loan. You inquire as to whether the town has the legal authority to finance the purchase of the fire truck, as outlined herein, without the approval of the electors of the Town of South Flomaton.
Section 166.111, F. S., provides:
 Authority to borrow. — The governing body of every municipality may borrow money, contract loans, and issue bonds as defined in s. 166.101 from time to time to finance the undertaking of any capital or other project for the purposes permitted by the State Constitution and may pledge the funds, credit, property, and taxing power of the municipality for the payment of such debts and bonds.
See s. 166.101(8), F. S., which defines the term `project' to mean a governmental undertaking approved by the governing body, including all property rights deemed necessary for the acquisition thereof, and to embrace any capital expenditure which the governing body deems to be made for a public purpose. See also s.166.101(1), F. S., defining the term `bond' to include notes and other obligations or evidences of indebtedness of any type or character; s. 166.101(4), F. S., defining the term `revenue bonds' to mean obligations of a municipality which are payable from revenues derived from sources other than ad valorem taxes `and which do not pledge the property, credit, or general tax revenue of the municipality' (Emphasis supplied.); s. 166.121(1), F. S., which provides that bonds (as defined by s. 166.101(1), F. S.) issued under part II of Ch. 166, F. S., shall be authorized by resolution or ordinance of the governing body `and, if required bythe State Constitution, by affirmative vote of the electors of the municipality . . . .' (Emphasis supplied.) Cf. s. 166.021(1), F. S., which empowers municipalities to exercise any power for municipal purposes except when expressly prohibited by law.
The exercise of this power to borrow is constitutionally limited by ss. 10 and 12, Art. VII, State Const. Section 10, Art. VII, operates to prohibit the loan or pledge of public funds orproperty to any person or nongovernmental entity or the use of the taxing power for other than municipal purposes. See O'Neill v. Burns, 198 So.2d 1 (Fla. 1967); cf. Bannon v. Port of Palm Beach District, 246 So.2d 737 (Fla. 1971). Section 12, Art. VII, State Const., the provision by which the answer to your inquiry is primarily controlled, applies to and authorizes a municipality to issue `bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance . . . to finance or refinance capital projects authorized by law and only whenapproved by vote of the electors.' (Emphasis supplied.) See State v. County of Dade, 234 So.2d 651 (Fla. 1970); AGO 076-121; cf. s.166.121(1), F. S. I must assume that in the instant inquiry the bank or lender possesses the right to enforce or foreclose the lien by the terms of the note or other evidence of indebtedness to be given by the city.
The State Constitution does not require approval by the electors when certificates of indebtedness or revenue bonds are payable solely from taxes or sources other than ad valorem taxes and do not otherwise pledge the municipality's taxing credit. Cf. State v. Board of Public Instruction, Okaloosa County, 214 So.2d 723
(Fla. 1968); State v. Orange County, 281 So.2d 310 (Fla. 1973), in which the court upheld the issuance of capital improvement bonds without an election to finance the acquisition and construction of authorized county buildings by a noncharter county payable solely from the county's share of racetrack and jai alai funds; Orange County Civic Facilities Authority v. State, 286 So.2d 193 (Fla. 1973), holding that, with the sole exception of ad valorem tax revenues, any revenues of a county could be pledged for the retirement of the proposed civil facilities revenue bond issue. Thus, if the money borrowed for the purchase of a fire truck is repaid solely from uncommitted revenue sharing funds making up theguaranteed entitlement of the city, as defined by s.218.21(6)(b), F. S., distributed to the municipality pursuant to ss. 218.23(2) and 218.245(2), F. S., or from any other non ad valorem tax revenues, no approving election or referendum is required. Moreover, the Charter for the Town of South Flomaton, a copy of which you enclosed with you letter, does not appear to require an approving referendum when non ad valorem taxes are being pledged. When, however, the revenue *4465 bonds, certificates of indebtedness, or other obligations or evidence of indebtedness are wholly, in part, or additionally secured by a lien or mortgage on the property being financed or other assets or property of the city, the Florida Supreme Court has generally regarded such mortgages or liens as the functional equivalent of a bond requiring approval by the electorate as mandated by s. 12(a), Art. VII, State Const. Attorney General Opinions 073-164, 073-261, and 076-121.
The Florida Supreme Court has held on a number of occasions that a municipality may not borrow money under any device or contractual financial arrangement for repayment with interest which pledges both non ad valorem tax revenues and municipal property or assets, unless such a financial arrangement is duly authorized by the electors of the municipality. In Boykin v. Town of River Junction,164 So. 558 (Fla. 1935), the court held that a municipality owning and operating a public utility may issue and sell revenue certificates and pledge as security for their discharge anticipated future revenues of the utility without holding an election; however, if the issuance of the revenue certificates is for the acquisition of a new utility secured by a pledge of the revenues of the utility and by a mortgage on the physical property, this creates a conditional indebtedness of the municipality and is prohibited unless authorized by the voters.See also Hollywood, Inc. v. Broward County, 90 So.2d 47, 51 (Fla. 1956), in which the court stated that the plan of financing
 . . . necessarily involved pledging the general credit of the County for a continuing obligation with interest thereon over a period of future years. This is so, because when the County acquired the property the mortgage to which it was subject became a charge against the property, and the County was placed in a position of being coerced to meet the annual requirements for interest and maturing principal under the mortgage. The alternative would be to lose the property by foreclosure.
See generally State v. City of Miami, 152 So. 6 (Fla. 1933); State v. City of Daytona Beach, 158 So. 300, 304 (Fla. 1934); Williams v. Town of Dunnellon, 169 So. 631, 636-637 (Fla. 1936); Spearman Brewing Co. v. City of Pensacola, 187 So. 365, 366-367 (Fla. 1939); Clover Leaf, Inc. v. City of Jacksonville, 199 So. 923, 925
(Fla. 1940), which provide that municipalities cannot pledge assets or property to secure any financial obligation or anywise, directly or indirectly, obligate the municipality's credit or coerce the use of its taxing power. Although the aforecited cases were decided under s. 6, Art. IX, State Const. 1885, the precursor of s. 12, Art. VII, State Const., they apply with equal force to the 1968 Constitution. See State v. Inter-American Center Authority, 281 So.2d 201 (Fla. 1973), in which cases construing the 1885 constitutional provision were held, in effect, to be applicable when determining the new constitutional requirements; AGO's 073-164 and 073-269; cf. AGO 077-14. In Nohrr v. Brevard County Educational Facilities Authority, 247 So.2d 304, 310 (Fla. 1971), the court stated:
 Commencing with the case of Boykin v. Town of River Junction, 121 Fla. 402, 164 So. 558 (1935), the court without exception has held that revenue bonds secured by a mortgage on the physical properties to be financed could not be issued by public bodies unless approved at an election.
Continuing at page 311, the court stated:
 While perhaps the county would experience no coercion to levy a tax to prevent the foreclosure of the project leased to this nonprofit corporation in the event of a default, yet, such would not be the case if these bonds were issued to finance a project for Brevard Junior College or for the University of Florida. Most certainly the county or the legislature would feel morally compelled to levy taxes or to appropriate funds to prevent the loss of those properties through the process of foreclosure.
 With certain exceptions not pertinent to the case sub judice, a mortgage with the accompanying right of foreclosure is not constitutionally permissible without an election. Consistency is desirable and absent specific constitutional authority a mortgage securing revenue bonds of a public body should not be approved without an election.
See also AGO 073-164 in which this office concluded that the deferred payment plan created a conditional indebtedness on the part of the county (or municipality) in the nature of a legal liability for a capital venture predicated upon the general credit of the local government; the plan placed the county (or municipality) in a position of being coerced into levying a tax in order to prevent the loss of the property by foreclosure. Such a plan with the accompanying right of foreclosure is not permissible under s. 12, Art. VII, State Const., without an approving election. This principle is not qualified or limited in use to liens or mortgages placed upon real estate but applies to any assets, property, or property rights of a municipality. See AGO 074-269 concluding that a fire district could not, through the use of any device, obligate the ad valorem taxing power for longer than 12 months to finance a capital project, such as the purchase of firefighting equipment, without the approval of the district's electorate. See also s. 166.101(4), F. S., defining revenue bonds as obligations payable from revenues derived from sources other than ad valorem taxes on real or tangible personal property and which do not pledge the property, credit, or general tax revenue of the municipality; cf. Florida Industrial Commission v. Growers Equipment Co., 12 So.2d 889 (Fla. 1943) (when word is a wide and comprehensive term, statutes using word without qualification must be given an equally comprehensive meaning).
You have stated that the money borrowed to make the purchase will be repaid from revenue sharing funds from the state. It is presumed that you mean that the money borrowed will be repaid solely from such funds and that ad valorem taxes will not be pledged or committed for such repayment. Part II of Ch. 218, F. S., the Florida Revenue Sharing Act of 1972, authorizes those units of local government as defined in s. 218.21(1), F. S., to participate in revenue sharing. See s. 218.21(1), F. S., defining `unit of local government' as a county or municipal government;see also s. 218.21(3), F. S. Cf. AGO's 073-246 and 074-367. The revenue sharing trust for municipalities is created and established by s. 218.215(2), F. S. To be eligible to participate in revenue sharing beyond the minimum entitlement defined in s.218.21(7), F. S., a unit of local government must comply with the provisions of s. 218.23. Section 218.23(2) also provides the formula for determining entitlement for eligible municipalities, including the guaranteed entitlement, see s. 218.23(2)(b), F. S. Section 218.25 restricts the use of moneys received in excess ofthe guaranteed entitlement defined by s. 218.21(6)(b) and designated in s. 219.21(6)(b) by stating in pertinent part:
 Local government shall not use any portion of the moneys received in excess of the guaranteed entitlement from the revenue sharing trust funds created by this part to assign, pledge, or set aside as a trust for payment of principal or interest on bonds, tax anticipation certificates or any other form of indebtedness, and there shall be no other use restriction on revenue shared pursuant to this part. (Emphasis supplied.)
Thus, it appears that a portion of the funds received pursuant to the Revenue Sharing Act — the guaranteed entitlement — could be used for the purpose contemplated if available and not previously encumbered. Cf. AGO 077-14, concluding in part that a county could use funds received pursuant to the Revenue Sharing Act, subject to the restrictions of s. 218.25, F. S., to secure a loan to purchase real property for authorized county purposes.
You state in your inquiry that the town proposes to finance the purchase of the fire truck through a bank loan over a period of about 10 years and, in addition to pledging certain revenue sharing funds to secure the loan, the town plans to additionally secure the loan by giving the bank a lien on the fire truck to be purchased. Based upon the foregoing constitutional provisions and judicial decisions, I must conclude that such a lien or mortgage on the property to be purchased (or any other assets or property of the town) as further or additional security for the loan or obligation of the town would require the approval of the electors of the town.
Prepared by: Joslyn Wilson, Assistant Attorney General