Mr. Ronald W. Thomas Executive Director Department of General Services Larson Building, Room 133 200 E. Gaines Street Tallahassee, Florida 32301
Dear Mr. Thomas:
You have requested an Attorney General's Opinion on substantially the following question:
 IS THE DIVISION OF COMMUNICATIONS OF THE DEPARTMENT OF GENERAL SERVICES AUTHORIZED TO PAY THE "911" FEE IMPOSED BY COUNTIES FOR EMERGENCY TELEPHONE SERVICES PROVIDED TO STATE AGENCIES?
Your letter states that in order to centralize telephone billing for state agencies, the Division of Communications receives and pays such telephone bills. Charges are then allocated by the division among the agency telephone users. Recently, the division has been receiving telephone bills which, in some instances, include a fee for "911" emergency telephone service. The Division of Communications does not believe that it is authorized to pay this fee (which is imposed by county government, although such fee appears on the telephone bill) and consequently has not made payment for this charge. Accordingly, you request this office's consideration of whether the Division of Communications of the Department of General Services is authorized to pay this fee.
This opinion does not consider or address any contractual liability which may exist between a state agency and any given utility for utility services provided to the agency.
Section 365.171, F.S., the "Florida Emergency Telephone Act," makes provision for a single, primary three-digit emergency telephone number, i.e., "911," through which emergency services can be quickly and efficiently obtained. In enacting the "Florida Emergency Telephone Act," the Legislature declared that this simplified means of obtaining emergency services will result in the saving of lives, a reduction in property damage and quicker apprehension of criminals. As stated in s. 365.171(2), F.S.:
 It is the intent of the Legislature to establish and implement a cohesive statewide emergency telephone number "911" plan which will provide citizens with rapid direct access to public safety agencies by dialing the telephone number "911" with the objective of reducing the response time to situations requiring law enforcement, fire, medical, rescue, and other emergency services.
The Division of Communications of the Department of General Services is required by s. 365.171(4), F.S., to develop a statewide emergency telephone number "911" system plan. This plan is, inter alia, to establish the public agency emergency telephone communications requirements for each entity of local government (defined in s. 365.171[3][c] to mean any city, county, or political subdivision of the state and its agencies) and to provide a system to meet specific local government requirements. This system is to include law enforcement, firefighting, and emergency medical services, and may include other emergency services such as poison control, suicide prevention, and emergency management services. Section 365.171(4)(a) and (b), F.S.
The Division of Communications is required in the "911" system plan to establish an implementation schedule which shall include the installation of the system in a local community within twenty-four months after the designated agency of local government places an order with the telephone utility for a "911" system. Implementation and coordination of the plan is the responsibility of the division which is required to adopt rules and schedules pursuant to Ch. 120, F.S., to accomplish this purpose. Section365.171(4)(e), F.S. This subsection also states that "[t]he public agency designated in the plan shall order such system within 6 months after publication date of the plan if the public agency is in receipt of funds appropriated by the Legislature for the implementation and maintenance of the `911' system." See, s.365.171(3)(d), F.S., defining "[p]ublic agency" as "the state and any city, county, city and county, municipal corporation, chartered organization, public district, or public authority located . . . within this state which provides, or has authority to provide, firefighting, law enforcement, ambulance, medical, or other emergency services." Section 365.171(4)(e), F.S., provides that if, as of July 1, 1976, a jurisdiction has used local funding to begin implementation of the state plan as provided in s.365.171, such jurisdiction shall be eligible for at least partial reimbursement of its direct cost when and if state funds for reimbursement are available; this provision regarding receipt of and reimbursement from state funds, however, is not the basis of your inquiry.
Your inquiry concerns the provisions of s. 365.171(13)(a), F.S., which states that any county which incurs "nonrecurring charges for the initial provision or subsequent addition of `911' service or equipment, or both service and equipment," may obtain payment for such service and equipment "by imposing a fee to be paid by the local exchange subscribers within its boundaries served by the `911' service." Approval of the "911" fee may be by referendum as provided in s. 365.171(13)(b), F.S., or by a majority vote of the board of county commissioners of participating counties. The statute specifies the manner of imposing and collecting this fee or payment:
 1. At the request of the county subscribing to "911" service, the telephone company shall spread the payment of the nonrecurring charges for the "911" service and equipment over a period not to exceed 18 months and shall, insofar as is practicable, bill said nonrecurring charges pro rata to the local exchange subscribers served by the "911" service, on an individual exchange line basis, at a rate not to exceed 50 cents per month per line (up to a maximum of 25 exchange lines).
 2. The telephone company shall have no obligation to take any legal action to enforce collection of the "911" fee.
 3. The county subscribing to "911" service shall remain ultimately responsible to the telephone company for all "911" service and equipment charges.
 As used in this paragraph, "telephone company" means an exchange telephone service provider of "911" service or equipment to any county within its certificated area.
Section 365.171(13)(a), F.S. Any county imposing a "911" fee in accordance with the provisions of subsection (13) shall pay to the telephone company an administrative fee equal to 1 percent of the "911" fee collected by the telephone company. Local governments are authorized by subsection (14) of the act to indemnify the telephone company against liability in accordance with the lawfully filed tariffs of the telephone company. See, Rule25-9.002(8), F.A.C., defining the term "tariff" as "the assembled volume containing the `rules,' `regulations,' `rate schedules,' `standard forms,' `contracts,' and other material required by these regulations as filed with the Commission"; Rule 25-9.002(4), F.A.C., defining "rate" to mean "the price or charge for utility service."
Thus, the "911" fee imposed pursuant to s. 365.171(13) represents a fixed payment for the nonrecurring charges for service and equipment for a limited period of time which is imposed and collected by the county via the telephone company from local exchange subscribers. Compare, ss. 364.03 and 364.035, F.S., regarding rates, tolls, contracts, and charges of telephone companies for "messages, conversations, services rendered, and equipment and facilities supplied" which are not confined to a limited time frame and are collected by the telephone company providing such services. And see, Reedy Creek Utilities v. Florida Public Service Commission, 418 So.2d 249, 253 (Fla. 1982), stating that the Public Service Commission is charged with the statutory duty to regulate and supervise public utilities with respect to their rates. With respect to the imposition of the "911" fee, the Public Service Commission is neither involved in establishing nor supervising the imposition of the "911" fee. Moreover, the statute provides for the payment of administrative costs (1 percent of the "911" fee collected) to the telephone company. Based upon the foregoing, it appears that the "911" is not a fee imposed upon the telephone company which, as authorized by tariff of the Public Service Commission, is passed on to the consumer of such utility services; but rather is a fee or charge on the consumer for which the telephone company merely acts as a collection agent.
Further, a distinction may be made between the "911" fee and an "impact fee" or "user fee." Impact fees are charges which are levied by local government against new development in order to generate revenue for capital improvements necessitated by such new development; they are used, in effect, as a means of shifting the costs of growth to those who are responsible for such growth. In Contractors and Builders Association of Pinellas County v. City of Dunedin, 329 So.2d 314 (Fla. 1976), cert. denied, 444 U.S. 867
(1979), the Florida Supreme Court held that a properly drafted impact or user fee ordinance is lawful and does not represent an unauthorized tax. The Court determined that a municipality may impose impact fees which do not exceed a pro rata share of the reasonably anticipated costs of capital expansion reasonably required because of new development provided that the money collected is limited in use to meeting the costs of capital expansion and the exactions are not inconsistent with a state statute. Thus, the Court concluded that local governments are authorized to shift to new residents the reasonable capital costs incurred on their account. See also, Hollywood, Inc. v. Broward County, 431 So.2d 606, 611 (4 D.C.A. Fla., 1983), stating that "[f]rom City of Dunedin [and other cited cases], we discern the general legal principle that reasonable dedication or impact fee requirements are permissible so long as they offset needs sufficiently attributable to the subdivision and so long as the funds collected are sufficiently earmarked for the substantial benefit of the subdivision residents"; Home Builders and Contractors Association of Palm Beach County, Inc. v. Board of County Commissioners of Palm Beach County, 446 So.2d 140 (4 D.C.A.Fla., 1983), in which court upheld authority of county to enact a "fee impact" ordinance which required any new land development activity generating road traffic to pay its "fair share" of the reasonably anticipated cost of expansion of new roads attributable to the new development; AGO's 85-101 and 82-9. And see, Wald Corp. v. Metropolitan Dade County, 338 So.2d 863 (3 D.C.A.Fla., 1976), cert. denied, 348 So.2d 955 (Fla. 1977), wherein the court held that dedication or impact ordinances are valid when there is a reasonable connection between the required dedication or fee and the anticipated needs of the community because of the new development. Cf., AGO's 84-48 (special assessments are charges assessed against the property of some *2107 particular locality because that property derives some special benefit from the expenditure of the money collected by the assessment, in addition to the general benefit accruing to all property or citizens), 82-103 and 82-9.
The "911' fee imposed by s. 365.171(13)(a), F.S., however, is not collected to finance capital improvements to and expansion of a utility system necessary to serve new users nor is it payable pro rata by the users of the expanded system for the use of such improvements and facilities but rather is a charge imposed indiscriminately on every telephone subscriber by and paid to, the county (not to the utility) regardless of actual use of or benefit from the "911" number. Therefore, I am of the view that the "911" fee does not constitute an impact or user fee.
This office has been advised that the United States Government has refused to pay the "911" fee on the basis that such fee is a "vendee tax" imposed by local governmental units for emergency service and not for actual telephone service, and accordingly, the United States Government has concluded that it and its agencies are constitutionally exempt from paying this fee. In general, the terms "tax" and "taxes" have been defined as burdens or charges which are imposed by the legislative power on persons or property to raise money for public purposes. See, 84 C.J.S. Taxation s. 1a. (1954). The essential characteristics of a tax are that it is not a voluntary payment or donation, but an enforced contribution, exacted pursuant to legislative authority, the contribution being of a proportionate character, payable in money, and imposed, levied, and collected for the purpose of raising revenue, to be used for public or governmental purposes and not as payment for some special privilege granted or service rendered. Taxes levied for governmental purposes are not imposed on the basis of any special or particular benefit which accrues to each citizen in proportion to the taxes paid, and the amount of taxes is limited only by governmental needs. 84 C.J.S. Taxation s. 1b. (1) (1954). And see, City of Orlando v. State, 67 So.2d 673, 674 (Fla. 1953) (a "tax" is an enforced burden of contribution imposed by sovereign right for the support of the government, the administration of the law, and to execute the various functions the sovereign is called on to perform); State ex rel. Gulfstream Park Racing Association v. Florida State Racing Commission, 70 So.2d 375, 379 (Fla. 1953) (in common parlance, a "tax" is a forced charge or imposition which operates whether one likes it or not and in no sense depends upon will or contract of the one on whom it is imposed). See also, Smith v. Lummus, 6 So.2d 625 (Fla. 1942); State ex rel. Watson v. Caldwell, 23 So.2d 855 (Fla. 1945); Kathleen Citrus Land Company v. City of Lakeland, 169 So. 356 (Fla. 1936); and St. Lucie Estates v. Ashley, 141 So. 738 (Fla. 1932); AGO 75-231. Therefore, while this matter is not free from doubt, in the absence of legislative or judicial direction, I am of the view that the "911" fee authorized to be charged pursuant to s. 365.171(13)(a), F.S., appears to be in the nature of a tax imposed to defray the nonrecurring charges incurred by a county in implementing the "911" service in that county. Regarding the nonrecurring nature of this fee, compare, s.365.171(13)(a), F.S., with s. 199.133, F.S., which imposes a one-time nonrecurring tax on each dollar of the value of notes, bonds, and other obligations secured by a mortgage, deed or trust, or other lien upon real property in this state.
The general rule, which Florida follows, is that the various instrumentalities of government are not subject to taxation and taxes may not be imposed upon the agencies or instrumentalities of the state unless they are specifically rendered subject to taxation. See generally, 84 C.J.S. Taxation ss. 206, 213 (1954); 71 Am.Jur.2d State and Local Taxation s. 336 (1973) (tax statutes are not to be construed to embrace property of government or its instrumentalities unless legislative intention to include such property is plainly and clearly expressed). See also, Dickinson v. City of Tallahassee, 325 So.2d 1 (Fla. 1975). Cf., Park-N-Shop, Inc. v. Sparkman, 99 So.2d 571, 573-574 (Fla. 1957) (property of the state and of a county is immune from taxation despite references to such property in statutes as being exempt); State ex rel. Charlotte County v. Alford, 107 So.2d 27, 29 (Fla. 1958) (although statutes specifically exempt state owned lands, such exemption is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government); AGO 83-23.
At issue in Dickinson v. City of Tallahassee, 325 So.2d 1
(Fla. 1975), was, inter alia, the validity of a utility tax imposed by the city on the State of Florida and its agencies and departments. The city had adopted an ordinance pursuant to constitutional and statutory taxing authority (s. 9[a], Art. VII, State Const., and s. 166.231[1], F.S. 1973) which imposed a 10% tax on all purchases of electricity, water and gas made within the city limits. The central issue of the case became whether the state had waived its immunity from city taxation in either the 1968 Constitution or the applicable tax statutes. The Court, noting that "[t]he State's immunity from taxation is so well established in Florida's jurisprudence that little elaboration is needed here," concluded that "the State of Florida, and the other appellants here, are immune from the 10% utility tax levied by the City of Tallahassee, since neither the authorizing constitutional provision nor the implementing statute constitute a waiver of that immunity." 325 So.2d at 3-4.
My examination of s. 365.171, F.S., failed to reveal any intention on behalf of the Legislature to waiver the state's sovereign immunity from taxation. Section 365.171(13), F.S., does not, either expressly or by implication, make provision for imposing the "911" fee upon agencies of the state or upon the state itself. The state and its agencies are not to be considered as within the purview of a statute, however, general and comprehensive the language of such statute may be, unless an intention to include them is clearly manifested. Attorney General Opinion 61-70. See, 3 Sutherland Statutory Construction s. 62.01 (4th ed. 1986); 82 C.J.S. Statutes s. 317 (1953); Duval County v. Charleston Lumber and Manufacturing Company, 33 So. 531, 534 (Fla. 1903) (county not subject to garnishment proceeding unless made so by express statutory provision); State v. Peninsular Telephone Company,75 So. 201 (Fla. 1917); City of St. Petersburg v. Carter, 39 So.2d 804
(Fla. 1949); and AGO's 74-261, 80-68, 80-100. As no express intention appears in s. 365.171(13), F.S., to make the provisions of the statute applicable to the state or its agencies, I cannot conclude that the state and its agencies are subject to imposition of the fee described therein.
Therefore, unless and until judicially or legislatively determined otherwise, I am of the opinion that the Division of Communications of the Department of General Services is not authorized to pay the "911" fee imposed by counties for "911" emergency telephone services provided to state agencies as such fee is in the nature of a tax from which the state and its agencies are immune in the absence of an express legislative waiver of such immunity.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Gerry Hammond Assistant Attorney General